STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIAM JOHN HILL AND CHARLES JOHN HEUSER, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 18, 1970—Decided May 25, 1970.

Before Judges GOLDMANN, LEWIS and MATTHEWS.

*Mr. Philip J. Blanda, Jr.,* argued the cause for appellants (*Messrs. Blanda and Blanda,* attorneys).

*Mr. Elliot L. Katz,* Assistant Prosecutor, argued the cause for respondent (*Mr. Vincent P. Keuper,* Monmouth

County Prosecutor, attorney; *Mr. Arnold B. Levin,* Assistant Prosecutor, on the brief).

Per Curiam. The Monmouth County grand jury returned a four-count indictment charging Hill with (1) keeping a place to which persons might resort for gambling and with intent that they might and should resort thereto, in violation of *N. J. S. A.* 2A:112–3, and (2) with keeping a place to be used for the business of lottery, contrary to *N. J. S. A.* 2A:121–3(c); and charging defendant Heuser with (3) bookmaking, in violation of *N. J. S. A.* 2A:112–3, and (4) receiving by telephone a list of numbers of a lottery, contrary to *N. J. S. A.* 2A:121–4(b). The jury found Hill guilty on the first count and Heuser guilty on the third and fourth counts. Defendants then moved for a new trial on the ground that the verdict was against the weight of the evidence and, further, the trial judge should have disqualified himself "by reason of his affiliation with the Prosecutors Office." The motion having been denied and defendants sentenced to State Prison terms, they appeal.

It is first argued that the search warrant used by the police was issued without probable cause. Defendants had unsuccessfully moved prior to trial to suppress the evidence and for a return of the property seized. We have examined the affidavit on the basis of which the search warrant was issued by a Superior Court judge and find that the facts and circumstances so revealed to him, in their totality established sufficient probable cause for the warrant. Specific information had been received by the State Police officer from a previously reliable informant who had personal knowledge of the bookmaking operation, and that information was independently and fully corroborated by police investigation.

It is next argued that the trial judge should have disqualified himself because his prior association with the county prosecutor's office gave the appearance of impropriety to his having anything to do with the conduct of the trial.

The matter had been mentioned in chambers before the trial began. After reviewing the file, the judge said he saw no reason why he should not continue with the case.

The facts are these: the trial judge was an assistant prosecutor from March 29 to July 29, 1968. The assistant prosecutor who tried the State's case was in the prosecutor's office at the same time. Defendants were arrested in April 1968 and the matter was referred to the prosecutor's office on the 22nd of that month. The trial judge stated on the record that he had examined the file in chambers and determined it had never crossed his desk and that he never had any knowledge of it. Significantly, the indictment here in question was returned two months after the judge left the prosecutor's office.

█ Apparently realizing that it is not enough to support their argument of impropriety that the judge had been a member of the prosecutor's office for a four-month period more than a year prior to the trial, defendants point to certain instances in the course of the trial tending to give credence to the alleged appearance of bias and prejudice on his part. We have not only examined each instance carefully, but considered all of them together in the total setting of the case and find that the trial judge's actions were at all times above criticism. There is nothing indicating a sense of personal involvement by the judge, or that anything he did might have prejudiced defendants' cause. Incidentally, we note that defendants never made a formal motion that the judge disqualify himself because of his prior association with the prosecutor's office.

A third ground advanced by defendants for reversing their convictions is that the trial judge was not qualified as a judge of the Superior Court and therefore could not properly preside over their trial. Our attention is called to *N. J. Const.* (1947), Art. VI, § VI, par. 2:

The Justices of the Supreme Court, the Judges of the Superior Court and the Judges of the County Courts shall each prior to his

appointment have been admitted to the practice of the law in this State for at least ten years.

Defendants allege that the judge was appointed an attorney-at-law of New Jersey on April 29, 1960 and was sworn into office as county district court judge on July 29, 1968; that the Chief Justice had on August 27, 1969 generally ordered that all full-time county district court judges be temporarily assigned to the Superior Court, Law Division, and that the trial was held September 8 and 9, 1969. It is therefore argued that the order implied, as a matter of law, that the constitutional qualification of the judges so assigned would be met. Accordingly, since the trial judge had not been admitted to the practice of law for a period of ten years, the claim now made is that he could not sit as a Superior Court Judge in the trial of the present case.

The argument is devoid of merit. The authority of the trial judge to preside was not questioned by defendants at any time during the course of the proceedings. Nor was the present argument advanced as a ground for granting a new trial. It was only after counsel argued the two grounds stated in the motion for a new trial — that the verdict was against the weight of the evidence and that the trial judge should have disqualified himself because of his prior association with the prosecutor's office — that the argument now made was advanced. The objection came too late and will not be heard on appeal. *State v. Pillo,* 15 *N. J.* 99, 102 (1954) ; *Curtis v. Joyce,* 90 *N. J. L.* 47, 48 (Sup. Ct. 1917), aff'd o. b. 91 *N. J. L.* 685 (E. & A. 1918). Whatever question there might be as to the application of the constitutional provision quoted above, the trial judge was, at the very least, a *de facto* judge. *Ibid.,* at 103–104.

Defendant Hill claims that the State failed to prove a *prima facie* case against him under the first count of the indictment charging him with violating *N. J. S. A.* 2A :112–3. Our reading of the record leads to a contrary conclusion. The State's evidence and the reasonable inferences that

might be drawn therefrom established a *prima facie* case that Hill, as charged, "willfully, unlawfully and knowingly did keep a place to which persons might resort for gambling and with intent that such persons might and should resort thereto for gambling."

■ Defendants also contend that the trial judge erred in admitting into evidence the *National Daily Armstrong* sheet, two white memo pads and a ballpoint pen seized in the course of the raid on the premises. The conditions and circumstances under which these items were taken raised a reasonable inference that although they had no suspicious markings, they were being used in a bookmaking operation. In the opinion of the detective who testified as the State's expert, the items seized were bookmaking paraphernalia.

■ Finally, it is argued on defendant Heuser's behalf that he was not a person within the meaning of *N. J. S. A.* 2A:121-4(b) and therefore his motion for acquittal on the fourth court of the indictment should have been granted. That statute reads:

> Any person, or any express, telephone, telegraph or other company or corporation, engaged in the business of carrying or transmitting packages, letters or communications within this state, that knowingly:
>
> *   *   *   *   *   *   *   *
>
> b. Receives from any person by letter, telephone, telegraph or any other means of communication. a list of numbers or drawing of any such lottery —
>
> Is guilty of a misdemeanor.

The State would read the statute to provide that "Any person * * * that knowingly: * * * b. receives from any person" etc. This would cut out the descriptive clause, "engaged in the business of carrying or transmitting packages, letters or communications within this state" — a clause that applies not only to companies and corporations but, in our view, to persons.

Accordingly, the motion for acquittal on the fourth count should have been granted.

The convictions of defendant Hill on the first count and of defendant Heuser on the third count are affirmed, and Heuser's conviction on the fourth count reversed.