199 N.J. Super. 368 (1985)
489 A.2d 1164
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PRINCE HORTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1984.
Decided February 22, 1985.
*369 Before Judges McELROY and DREIER.
Jacqueline E. Turner, Assistant Deputy Public Defender argued the cause for appellant (Joseph H. Rodriguez, Public Defender, attorney; Jacqueline E. Turner, of counsel and on the brief).
*370 Abbie P. Maliniak, Deputy Attorney General argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Abbie P. Maliniak, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from a conviction on three counts of armed robbery in violation of N.J.S.A. 2C:15-1. He was sentenced to three concurrent terms of 20 years each, with a 10 year parole ineligibility and assessed a $75 penalty payable to the Violent Crimes Compensation Board. We have determined that the conviction must be reversed and the matter retried.
On February 18, 1981, three men wearing stocking masks and armed with what appeared to be silver .25 caliber handguns robbed Fast Eddie's, a restaurant in Penns Grove, New Jersey, as well as each of the two employees of the restaurant. The robbery occurred at approximately 7 p.m. A detective sergeant responded to the police call after the robbery and arrived at the restaurant between 7:15 and 7:30 p.m.
One of the employees claimed that one of the robbers was defendant, who the day before had applied for a job at the restaurant. Both employees agreed that the robber in question wore gray pants. One remembered that his stocking mask was dark, with the eyes, nose and mouth cut out; the other claimed the mask was a light color without any cutouts and added that the individual wore white sneakers.[1] Both witnesses, however, agreed that they could see the robber's features through the mask and, on the day after the robbery, identified defendant from a photographic array. In fact, one of the witnesses, while giving a formal statement to the detective after identifying *371 defendant's photograph, recognized defendant walking down the hall of the municipal building. Both witnesses further identified defendant at trial. In addition, the witnesses identified at trial a pair of gray pants and a pair of white sneakers, produced pursuant to a search warrant executed at defendant's home, as the ones worn by the robber.
Defendant testified that at the time of the robbery he was with his mother at a high school wrestling match in which his brother was wrestling. He claimed that he was at the high school from 6:30 p.m. to 9:30 p.m. and, in support of his story, presented six alibi witnesses who placed him at the high school at various times during that period.

I
The central issue in this case was the identity of the robber. This issue placed defendant's alibi witnesses in sharp disagreement with the State's witnesses' identification of defendant.
With regard to what defendant was wearing on the night in question, four of the alibi witnesses remembered his pants as being either dark blue or black; the others could not recall the color. Defendant himself claims to have been wearing black pants, black shoes and a short jacket. Although the alibi witnesses placed defendant at the wrestling match at different times during the evening, it is possible that defendant could have left, met with confederates, held up the restaurant and returned to the wrestling match. Given the very definite recollection by the alibi witnesses of the color of defendant's trousers, he also would have had to change his clothes before and after the robbery. He claims that the gray pants seized pursuant to the search warrant had been put in a bag for the Salvation Army and had not been worn since he did painting and chemical cleaning work for a local manufacturer years ago. He doubted that they would still fit him. He further claimed that the high-topped sneakers that were seized were not his, but were the property of his younger brother. Defendant *372 contended that he cannot wear such sneakers because they irritate his ankles.
Defendant had planned to call his mother as his second alibi witness at the start of the third day of the trial. His mother, however, in violation of a sequestration order issued at the commencement of the trial, had sat in court at the end of the previous day during the testimony of the first alibi witness. Defense counsel brought this to the attention of the court on the morning of the third day, claiming that Mrs. Horton unintentionally had violated the order out of concern about her son, and that counsel had not realized she was in court until the end of the day. The judge initially stated "I have no problem if the Prosecutor doesn't." The prosecutor, however, asserted that he had a problem and objected to Mrs. Horton's being called as a witness. Defense counsel stated that he would leave the matter up to the court, and the judge stated:
I don't think it is a question of intention. I'm satisfied that the woman did not do it intentionally, but she may have inadvertently heard something that could maybe subconsciously hinder her testimony. So, for that reason I am going to grant your application to preclude her from testifying.
Defendant now contends that, after the additional five witnesses testified, it became apparent that Mrs. Horton was the only witness who could have placed defendant at the wrestling match during the entire evening.
While the better practice would have been for defendant to have renewed his application to permit his mother to testify so that the trial judge might have been able to reconsider his ruling, the trial judge should have been aware of the procedures described by this court in State v. Tillman, 122 N.J. Super. 137 (App.Div.), certif. den. 62 N.J. 428 (1973). The witness sequestration order itself did not violate any right of defendant. State v. Ross, 189 N.J. Super. 67, 71 (App.Div. 1983). There is no automatic exclusion rule based on a witness' inadvertent violation of a sequestration order by sitting in the courtroom. See Annotation, "Effect of witness' violation of order of exclusion," 14 A.L.R.3d 16, 22, 56 (1967), where the editor notes that *373 "[a]ll American cases agree." The Tillman court even noted that "under extraordinary circumstances," the exact nature of which was not discussed, "consideration may be given to the ... possibility of excluding the testimony of the offending witness." 122 N.J. Super. at 143. This statement, however, was made in the context of a State's witness' misconduct. The court, in addition, noted a caveat "as to the appropriateness of this remedy in a criminal case as affecting the defendant's constitutional right to a fair trial." Id. at 144.
Where a defendant's witnesses are claimed to be excludable, defendant's Sixth Amendment rights "to have compulsory process for obtaining witnesses in his favor" might be infringed. U.S. Const., Amend. VI and XIV; N.J. Const. (1947), Art. I, par. 10. See also, Annotation, supra, 14 A.L.R.3d § 2(c) at 54. As was stated by the Pennsylvania Supreme Court in Commonwealth v. Scott, 496 Pa. 78, 436 A.2d 161, 163 (1981):
Absent a showing of fault on the part of the party or counsel who called a witness, the overwhelming weight of authority is that a trial court should not deprive a criminal defendant of a witness' testimony solely because he violated a sequestration order.... To deny an accused the opportunity to present relevant and competent evidence in his defense would constitute a violation of his fundamental constitutional rights to compulsory process for obtaining witnesses in his favor and to a fair trial...
Because of the availability of alternative sanctions to enforce a sequestration order and because of the fundamental constitutional basis for an accused's right to present relevant testimony in his favor, it ordinarily would be an abuse of discretion to disqualify a witness unless either the accused or his counsel has somehow cooperated in the violation of the order.
The Tillman court recommended:
Where it does not clearly appear that the violation of the sequestration order possesses a potential for prejudice, a less drastic remedy appears to be proper. The court may, in its discretion, also call the disobedience of the order to the attention of the jury as bearing on the credibility of the witnesses involved ... in such case the parties may interrogate the witnesses as to what occurred and may comment thereon in their summations. [122 N.J. Super. at 143.]
The court also there noted that "particularly in light of the sharp dispute on the issue of identity, in the absence of any remedial procedures taken by the court to mitigate the prejudicial *374 effect of the violation of the sequestration order ... a new trial must be granted." Ibid.
We reach the same conclusion in this case. Although in Tillman the sequestration order had been violated by the State, thereby prejudicing the defendant before a jury who might fail to appreciate the basis of the congruency between the testimony of two of the State's witnesses, we have in this case the mirror image of such a problem. Again, the defendant is prejudiced both by possible speculation on the part of the jury as to why defendant's mother, who had been identified as having been with him at the wrestling match, did not testify, and also by being deprived of the sole witness who could have established his alibi for the entire period in question. We cannot, therefore, deem such error to have been harmless under R. 2:10-2.

II
An additional problem in this case came to light during the sentencing preceeding, after both the prosecutor and defense counsel had addressed the court concerning the seriousness of a prior juvenile delinquency conviction. This prior conviction was based upon defendant's involvement with an armed robbery, atrocious assault and battery, and assault with intent to kill, which had occurred approximately 5 years and 3 months prior to this offense.[2] In the three years since defendant had attained his majority, the only charge that had been brought against him was for possession of under 25 grams of marijuana approximately a year prior to the robbery here under discussion. During the sentencing procedure, defendant acknowledged the prior offense in which he had struck the victim with a baseball bat, inflicting permanent mental injury. Defendant *375 spoke of his prior incarceration and also of the alleged present misidentification of him as one of the robbers. After repeated denials, defendant stated:
I had the utmost respect for Mr. Paladino [the assistant prosecutor] and yourself Mr. X [the judge]. You was my lawyer once. You know what I'm saying? Somehow somebody has been affected. The crime I committed when I was younger, I paid for them crimes. When you was my attorney, I told you I did them crimes. I admitted to my wrong doings, but I didn't do anything wrong here no time. I mean, during this for my alleged crime I am accused of, I never did anything wrong as far as this thing right here. [Emphasis added.]
The trial judge, without reference to defendant's statement of his personal familiarity with both defendant and the circumstances of the prior robbery, gave defendant the maximum sentence permitted by law together with the maximum parole ineligibility. N.J.S.A. 2C:43-6 a, b and c. The public has no way of knowing (a) what confidences, if any, defendant imparted to the trial judge when represented by him at the time of the earlier robbery; (b) whether the judge was a public defender or, if not, whether there was a fee problem; or (c) whether there were other offenses that defendant admitted to during conferences with his then attorney. Even beyond the issue of sentencing, the prior lawyer-client relationship could also have given the appearance of influencing trial rulings. If for no other reason than to give both the State and defendant an opportunity to make a record concerning potential disqualification, the very least that the trial judge should have done was to place this information on the record at the commencement of the proceeding.
There is both a rule of court and a statute which govern the potential disqualification of a judge. R. 1:12-1(c) and (f) provide:
The judge of any court shall disqualify himself on his own motion and shall not sit in any matter, if he
....
(c) had been attorney of record or counsel in the action; or

*376 ....
(f) when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so.
The statute N.J.S.A. 2A:15-49(b), reads:
No judge of any court shall sit on the trial of or argument of any matter in controversy in a cause pending in his court, when he:
....
b. Has been attorney of record or counsel for a party to such action;
Since the trial judge had never been an attorney for defendant "in the action" before us, technically there would be no disqualification under R. 1:12-1(c), although the judge would be disqualified under the statute as a former "attorney of record" and "counsel" for defendant. Since defendant made no motion challenging the judge before the trial, pursuant to N.J.S.A. 2A:15-50 the issue of the statutory violation might be said to be improperly raised at this time. See Bonnet v. Stewart, 155 N.J. Super. 326, 330 (App.Div.), certif. den., 77 N.J. 468 (1978); State v. Hill, 110 N.J. Super. 370, 374 (App.Div. 1970). However, overriding considerations still call for our analysis of the interplay between the statute and rule.
A historical analysis further explains the difference in language between the rule and the statute. In our earliest common law there was no prohibition against a judge having been counsel to a party. In Denn v. Tatem, 1 N.J.L. 190 [[*]164], 191 (Sup.Ct. 1793), the Supreme Court permitted the Chief Justice "to strike the jury" notwithstanding his having been "attorney on record for the lessors of the plaintiff." The court's note to this case quotes Blackstone, Coke and other authorities permitting the judge to act notwithstanding prior representation of a party, and an example is given where "Judge Blackstone, though he had been of counsel with plaintiff, gave his opinion." Id. at 191. Another editorial note to this case cites Pat.Laws 254 for 1797 as authority for the statement that "A judge who *377 has been counsel or attorney, cannot now strike a jury, or sit on the trial or argument." L. 1820, c. 21 also provided:
No justice or judge of any court of record in this state, who ... shall have been attorney on record or counsel for either party in any ... cause ... shall sit in judgment upon the trial or argument of any point in controversy in any such cause.
This statute apparently is the progenitor of R. 1:12-1(c). P.L. 1903, P. 595, 3 Comp.Stat. of New Jersey § 224, at 4121, states:
No judge of any court who ... shall have been attorney of record or counsel for any party to the action ... shall nominate or strike the jury or sit on the trial or argument of any point in controversy in such action.
This latter statute is noted to have been the progenitor for R.S. 2:26-193 and our current statute.
Given the similarity of the statute and rule and the desirability that a single standard be understood, even had N.J.S.A. 12A:15-50 been complied with, the provisions of the rule should apply. N.J. Const. (1947), Art. VI, § II, par. 3; State v. Deutsch, 34 N.J. 190, 206 (1961); Winberry v. Salisbury, 5 N.J. 240, cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).
Our determination that the less restrictive court rule would apply directly to this case does not end the matter, since subsection (f) of the rule, quoted above, still must be considered. The potential for invidious, though, we are sure, unfounded, suppositions as to the court's motive in trying and sentencing a former client causes us strongly to suggest that a trial judge faced with such situation should recuse himself and have another judge assigned to try the case. Since this matter is to be remanded for a retrial, we direct that the retrial be held before a different judge.
Defendant has raised two additional points on this appeal, that the verdict was against the weight of the evidence and that his sentence was manifestly excessive. Since we have determined that the conviction must be reversed and the matter retried, it will be unnecessary to consider these points. The conviction appealed from is reversed and this matter is remanded to the Law Division for a new trial.
NOTES
[1] We note that the witness who saw no cut out portions of the robbers' masks was so definite about her testimony that, when asked if the other witness had said there were such cutouts, she responded that, if so, "she was lying."
[2] Defendant also had a prior juvenile offense record for malicious damage, as well as for shoplifting and purse snatching  charges for which he was concurrently sentenced with the armed robbery and related offenses to an indeterminate term at Yardville.