292 N.J. Super. 76 (1996)
678 A.2d 299
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DARRELL DAYTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1996.
Decided July 1, 1996.
*78 Before Judges SHEBELL, STERN and WALLACE.
Vincent J. Pancari argued the cause for appellant (Kavesh, Pancari, Tedesco & Pancari, attorneys; Mr. Pancari, on the brief).
Linda A. Rinaldi, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Ms. Rinaldi, of counsel and on the letter brief).
The opinion of the court was delivered by STERN, J.A.D.
*79 Defendant was indicted on four counts of aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1b(4) (counts one through four); possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a (count five); and unlawful possession of a handgun, N.J.S.A. 2C:39-5b (count six).
On the day of trial, defendant's attorney moved to withdraw as defense counsel on grounds that his "testimony might be necessary" in light of his meeting with two of the State's witnesses and the prosecutor's recent report that the witnesses' statement given in counsel's office "had been in some way pressured out of them" by the attorney. The prosecutor advised the court that while the witnesses, victims James Barr and Billy Dave Britton, were told by defense counsel that the weapon was a knife, both witnesses would testify that the weapon counsel "show[ed] them in his office was not the weapon that the defendant used." The judge denied the motion, reasoning that it was common that "you get witnesses that bounce back and forth between different sides," and that if they were reinterviewed there was a "good chance ... they'd give you another statement."
Defense counsel then moved for sequestration of the State's witnesses, and the court ordered all witnesses sequestered. Trial was then commenced. Defendant's motion to "dismiss" (and for entry of judgment of acquittal) was granted as to counts three and four at the end of defendant's case. Those counts alleged aggravated assault on L.W. and A.A. Defendant was found guilty of counts five and six, the weapons violations, and on count one, the aggravated assault upon James Barr. The jury found defendant not guilty as to count two, aggravated assault upon Bill Britton.
After denial of defendant's motion for a new trial, defendant was sentenced to a presumptive seven year term with a mandatory three year parole disqualifier under the Graves Act on count five, and to concurrent terms on the other convictions. Defendant was *80 assessed a $150.00 Violent Crimes Compensation Board penalty and $225.00 Safe Street penalty.
On this appeal defendant argues:
POINT I THE TRIAL COURT ERRED IN FAILING TO RELIEVE DEFENDANT'S ATTORNEY AND FAILING TO GRANT A CONTINUANCE OF THE TRIAL SO AS TO PERMIT DEFENDANT TO OBTAIN NEW COUNSEL.
POINT II THE ATTORNEY FOR THE DEFENDANT PROVIDED INEFFECTIVE ASSISTANCE SUFFICIENT TO CREATE A REASONABLE PROBABILITY THAT HIS INEFFECTIVENESS MATERIALLY CONTRIBUTED TO THE DEFENDANT'S CONVICTION.
POINT III THE TRIAL COURT ERRED IN FAILING TO PERMIT A WITNESS CALLED BY THE DEFENSE TO TESTIFY ON THE BASIS THAT SHE VIOLATED AN ORDER OF SEQUESTRATION THEREBY SEVERELY PREJUDICING THE DEFENDANT.
We reverse defendant's conviction and remand for a new trial.

A.
The events which led to the defendant's indictment occurred on the evening of November 1, 1993 when James Barr (Barr), Billy Britton (Britton) and A.A. went to the home of L.W. to pick her up for a movie. Defendant, who lived in the duplex next to L.W., was sitting on the porch of his house. The four friends left L.W.'s house about fifteen minutes later, and saw defendant on the steps of the house.
As the four were driving away defendant walked into the street and "flagged down" the car. Defendant was upset about reports that L.W. had told Britton (her boyfriend) that defendant had kissed her. Defendant had also heard from L.W. that Britton, therefore, "wanted to fight" him. According to Britton, defendant ordered him out of the car, but Barr got out and indicated that he would fight the defendant.
As the two approached each other, defendant pulled an object from his pocket. The quartet testified that it was a gun. Barr saw defendant cock the gun and thought it was a .9 millimeter. Britton testified it was "a semi-automatic pistol." There was also testimony that defendant actually touched Barr with the gun and *81 that Barr retrieved a baseball bat from the car for use in the confrontation.
Defendant testified that he only pulled out a knife in a pouch. He stated that he carried the knife which he had purchased at "Cowtown" for protection. After he and Barr argued and struggled briefly, defendant got on his bicycle and rode away. Later that evening, Barr, Britton, A.A. and L.W. reported the incident to the police.
Defendant was arrested in his home six days later, at "approximately 1 o'clock in the morning," by two police officers who told him he was being charged with aggravated assault with a firearm. His girlfriend, Stephanie Loud, was present at the time. The police executed an arrest warrant but did not have a search warrant to search the apartment. Although they looked around the home, the police did not open any drawers or cabinets.
Defendant testified that he told the arresting officer that the object involved was a knife, and that it was in a kitchen drawer. He testified that he told the officers that he did not have a gun and gave them permission to search his apartment. He said the officers conducted a limited search, but did not go into the drawer where the knife was, and that they seized no weapon. After his arrest, defendant filed charges against Barr for assault with a baseball bat during the incident.
Sometime after defendant was indicted, Barr and Britton were contacted by defendant, who asked that they speak with his attorney, Robert S. Greenberg. Britton agreed to the meeting because at that time he was on friendlier terms with defendant, and he considered the incident as a "big misunderstanding" and wanted to help defendant. According to Britton, he never told Greenberg that the weapon was not a gun because "[t]hey made it seem like if I said that [the knife Greenberg showed him] was the gun, everything would be over with real quick." Britton did not want to go to court and signed a statement prepared by Greenberg.
*82 Barr testified that defendant told him he was going to have a baby and asked him "to say it was a knife or something" so the charges against defendant could be reduced. In exchange, defendant promised to "drop" the charges involved in Barr's use of the bat. Barr testified that he told Greenberg that defendant had a gun, and that the knife Greenberg showed him was not the weapon defendant possessed. Barr also testified that the statement he gave Greenberg was not the truth, but that he signed it because he was "concerned with ... going to jail" in light of his use of the bat. Greenberg "insinuated" Barr might go to jail and defendant agreed to dismiss the charges against Barr. On cross-examination, Barr acknowledged that he told Greenberg that the statement was true when it was read to him before the statement was signed.
The statement read:
We, Bill Britton and James Barr were interviewed by Robert Greenberg, attorney for Darrel Dayton on 5/12/94. Mr. Greenberg showed us a black-handled knife and a black case. We believe that the weapon which we thought was a gun may have been a knife, this knife. It was dark out at the time and neither of us got a good look at the weapon. This statement is true.
Barr and Britton testified, however, that they were positive that the weapon was a gun.

B.
Defendant asserts that "the Trial Court's refusal to grant defense counsel's application to withdraw so prejudiced the defendant as to require a reversal of his conviction and the grant of a new trial." The State suggests that, even if the application should have been granted, any error was harmless because both Barr and Britton acknowledged voluntarily signing the statement as true and accurate.
Immediately prior to jury selection Greenberg moved to withdraw as counsel and for a continuance so that defendant could obtain new counsel. In support of the motion, Greenberg stated that, several months earlier, he had interviewed Britton and Barr in his office. A week before trial (which commenced on December *83 6, 1994), the prosecutor called to advise him that the two had recently been interviewed by the Prosecutor's office. According to Greenberg, there was some suggestion that Barr and Britton would testify that "perhaps the statement they had given in my office had been in some way pressured out of them by me." Greenberg believed that if either denied making the statement or suggested in open court that the statement was not made voluntarily, his testimony "might be necessary to contradict their statements in front of the jury." Greenberg, therefore, believed that his inability to testify would prevent defendant from putting forth facts relevant to the defense. He, therefore, moved to withdraw so that he could appear as a witness at the trial.
The trial judge denied the motion. At the close of defendant's case, however, the judge told defense counsel "[i]f you want to testify in this case, you can be my guest. I certainly have no objection to it. You can get on the witness stand and testify, if that's what you want to do." Counsel declined the offer and advised the judge "I'm not going to do that. And I think under the rules of professional conduct, it would not be ... permitted to take the stand on my client's behalf."
Defendant contends that he was denied due process because his attorney could not testify and give relevant evidence. He relies on RPC 3.7 which provides, in relevant part, that:
(a) a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
[Emphasis added.][1]
*84 We have held that "the ethical prohibition" embodied in RPC 3.7 "is not against being a witness, but against acting as trial attorney in a case where it is likely that the attorney's testimony will be necessary." State v. Tanksley, 245 N.J. Super. 390, 393, 585 A.2d 973 (App.Div. 1991). We have thus said that "[a]n attorney representing a party at trial is competent to testify at the trial even though his decision to try the case may have been unethical." Ibid. See also Callen v. Gill, 7 N.J. 312, 318, 81 A.2d 495 (1951); State v. Riley, 216 N.J. Super. 383, 390-91, 523 A.2d 1089 (App. Div. 1987). Here, the attorney chose not to testify for ethical reasons, and we must pass upon the impact of the denial of the motion to withdraw.
The reasons for permitting an attorney who is likely to become a witness to withdraw as counsel were recently developed in Freeman v. Vicchiarelli, 827 F. Supp. 300 (D.N.J. 1993). Freeman was a civil action in which defendant police officer Vicchiarelli moved to disqualify plaintiff's attorney because he was a "likely" witness at trial, 827 F. Supp. at 301. Counsel had been present at a conference during which defendant and a prosecutor allegedly demanded the execution by plaintiff of a release form before dropping charges they knew to be "mistaken." Id. Plaintiff alleged that defendant maliciously prosecuted the matter in municipal court and violated his due process rights "in an attempt to shield Vicchiarelli from potential future liability" because plaintiff would not sign the form. Id. Plaintiff was not present at the conference, and the defendant denied the allegations of the complaint.
Plaintiff opposed the disqualification motion on the grounds that his attorney was "not a `necessary witness'" because it was not certain he would be called to the stand and that the motion was premature. However, Magistrate Rosen (applying New Jersey law) granted the defendant's application for disqualification, stating:
Although neither Plaintiff nor Defendant have stated that Mr. Lands will be called as a witness, RPC 3.7 does not require certainty as to a lawyer's testimony; the plain language of RPC 3.7 requires only "likelihood." In this case, it is more than *85 likely that Mr. Lands will be a necessary witness. His testimony regarding the substance of the conversation in conference with Officer Vicchiarelli and Assistant Prosecutor Donovan is the primary evidence in this case. Plaintiff needs Mr. Lands' testimony to establish any unlawfulness in Defendant's pursuit of the probable cause hearing. As the complaint presently stands, it is hard to imagine how Plaintiff's claim can succeed without Mr. Lands' testimony.
Plaintiff's second contention, that the attorney-witness rule only operates once the trial has commenced, misstates the scope of RPC 3.7. Because the language of RPC 3.7 on its face prohibits an attorney from acting in dual capacities at trial, Plaintiff argues that Mr. Lands should be allowed to continue to serve as Plaintiff's attorney prior to the trial. Though this argument is based upon a reasonable construction of the language of RPC 3.7, close examination of the case law and policies regarding the attorney-witness rule reveal that the attorney-witness rule begins to operate as soon as either attorney realizes that a possible conflict may arise.
[Freeman v. Vicchiarelli, supra, 827 F. Supp. at 302-03.][2]
Here defendant wanted his counsel to withdraw so he could testify, and the issue is not what the court should have done if they sought his continued representation over prosecutorial objection. See RPC 3.7(a)(1)(3).
Freeman also rejected plaintiff's stipulation that his counsel would not testify, despite its adverse impact on plaintiff's case. According to Magistrate Rosen:
The primary purpose of the attorney-witness rule is protecting the interests of the client. Advisory Committee on Professional Ethics, Opinion No. 630, 124 N.J.L.J. 906, 926. If the case may be "handled by any competent lawyer ... it is appropriate for [the attorney-witness] to withdraw." Id. at 926, quoting Advisory Committee on Professional Ethics Opinion No. 233, 95 N.J.L.J. 206 (1972). Even when there is a question as to the materiality of the lawyer's testimony to the client's case, "doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." Advisory Committee on Professional Ethics, Opinion No. 233, 95 N.J.L.J. 206-207, (1972) quoting ABA Model Code of Professional Responsibility EC 5-10.

*86 Permitting an attorney to stay in a case by foregoing testimony necessary to his client's claim is tantamount to allowing an attorney to knowingly provide his client with less than the best advocacy. By concealing important, admissible evidence from the fact finder, such an attorney would be hurting his client. The withdrawal of "necessary" testimony would also inhibit the court from viewing all of the evidence necessary to reach a just decision. The attorney-witness rule, designed to protect the client and to maintain the integrity of the fact-finding process, can not lead to such an incongruous result.
[Freeman v. Vicchiarelli, supra, 827 F. Supp. at 306 (footnote omitted).]
We express our concern as to why defense counsel would interview the complainants or victims of the alleged offense without the presence of an investigator or some third party (other than defendant) who could be called to testify as to exculpatory information they conveyed. Having not done so, we do not understand why counsel did not earlier take action to withdraw in order to be able to so testify. It may be that it was already expected that defendant would testify, but his testimony might not be given the same weight as another observer. It may also be that counsel did not expect a repudiation  an event which is not foreign to a criminal trial practitioner. But, no matter the reason, counsel let at least a week pass after being advised by the prosecutor  as part of continuing discovery  that Barr and Britton would repudiate their statement to Greenberg and testify that defendant had a gun.[3] He should have moved to withdraw prior to the day of trial, and we can understand the judge's negative reaction at that time.
In his certification in support of the motion for a new trial, Greenberg described the testimony he would have given. He certified that he did not know Barr or Britton prior to the meeting; he did not suggest that he "wanted them to make a false statement"; he did not negotiate or offer Barr a promise to drop the assault charges against him; he never told them they would not have to go to court if they signed the statement; and he told *87 the two that he would give the prosecutor a copy of the statement. Further, the attorney certified that:
When I showed the knife in question to Britton and Barr, they examined it closely. Both defendants (sic) admitted to me that it was dark. Britton told me that when the weapon was exposed, defendant was too far away for him to see it clearly. During their interview, the demeanor of both Britton and Barr appeared sincere. Neither laughed when shown the knife or made any comment inconsistent with the doubt which was expressed in the statement signed by them.
It is true, as suggested by the State, that Barr and Britton admitted during trial that their statement to Greenberg was voluntary and that they were not pressured to sign it. It is also true, as urged by the State, that these witnesses' credibility was clearly an issue before the jury as a result of the statement and that L.W. and A.A. never flinched on their insistence that a gun was employed. But we know that the realities and impressions at trial may be different than the academic review of the words in the transcript prepared for an appeal. The direct testimony of defendant's attorney could have had far more impact and better effect than the admissions of the principal State's witnesses, particularly because they both indicated telling Greenberg at some point during the interview that defendant had a gun. Greenberg clearly had no such recollection. Moreover, despite what Barr and Britton said in their trial testimony, the jury may have been left with the impression that the witnesses would not admit the pressure or impact of counsel's presence at the conference when they were asked by him at trial about his conduct. In any event, the absence of testimony by counsel about what occurred in his office on a significant issue left a void at trial. Moreover, we cannot speculate as to its potential impact on the credibility of L.W. and A.A. in addition to that of Barr and Britton.
We need not, however, decide if the failure of counsel to move earlier to be relieved justified denial of the motion to withdraw or if that denial by itself warrants reversal in light of the totality of the proofs. This is so because we find that the preclusion of the testimony of defendant's girlfriend also affects the aggregate of factors warranting reversal.

*88 C.
Defendant asserts that the trial court committed error by refusing to allow Stephanie Loud (Loud) to testify in surrebuttal because she had been present in the courtroom during the other testimony.
The sequestration order arose after defense requested that the State's witnesses be sequestered. In response, the trial court issued a blanket order prohibiting all witnesses from being present for any testimony. Upon completion of the rebuttal testimony of arresting Officer Murphy, defendant sought to put Loud on the witness stand.
Murphy had testified that upon arrest defendant was told that "he was accused of having a semi-automatic weapon, a handgun," and that defendant "was curious as to why [they] were picking him up," but that he did not say it was a knife as opposed to a gun. Murphy also testified that defendant's girlfriend was in the house at the time and that if something about a knife was mentioned, "[t]hat would have been documented in [Murphy's] investigation report." In response to a question, "[i]s it that you don't remember him saying anything about a knife or that you don't recall specifically he said nothing about a knife," Murphy responded, "I don't know specifically." On cross-examination Murphy admitted that defendant "gave us permission" to search the apartment for a gun, but that Murphy "declined that invitation."
The defense sought Loud's testimony to support defendant's position that he did, in fact, tell Murphy that he had a knife.[4] The State objected because Loud had been in the courtroom during "other testimony." The defense asserted that it was "surprised" *89 by Murphy's rebuttal testimony, and had not originally intended to call Loud as a witness. The trial judge declined to allow Loud's testimony.
A defendant has a right to call witnesses to testify in his defense. See State v. Fort, 101 N.J. 123, 128-29, 501 A.2d 140 (1985); State v. Vassos, 237 N.J. Super. 585, 590-92, 568 A.2d 583 (App.Div. 1990). We have nevertheless stated that in extraordinary circumstances, a witness who has violated a sequestration order may be barred from giving testimony at trial. State v. Tillman, 122 N.J. Super. 137, 143-44, 299 A.2d 419 (App.Div.), certif. denied, 62 N.J. 428, 302 A.2d 132 (1973).
There is no automatic exclusionary rule based on a witness' inadvertent violation of a sequestration order by sitting in the courtroom. State v. Horton, 199 N.J. Super. 368, 372, 489 A.2d 1164 (App.Div. 1985). In Tillman, we granted a defendant a new trial because the prosecutor met with two witnesses together after the sequestration order was entered, "there was a clear violation of the sequestration order and fault on the part of the State," 122 N.J. Super. at 142, 299 A.2d 419, and the trial judge took no remedial action "to mitigate the prejudicial effect of the violation of the sequestration order." Id. at 143, 299 A.2d 419. The issue there was far different than whether defendant can be deprived of the right to call a defense witness whose testimony did not become relevant until the State presented rebuttal evidence contradicting defendant's testimony that he immediately told the arresting officer that he possessed a knife, not a gun. Nevertheless, in Tillman this court set out a general procedure for handling sequestration violations. The court suggested that the trial judge "should promptly conduct a voir dire out of the presence of the jury in order to ascertain the nature and extent of [the] violation ... [and] thereupon determine what remedial action is required, if any, in light of all the circumstances." Ibid. We noted that, "[i]n the extraordinary case ... [where] the prejudice cannot be dissipated by other remedial action ... the court may grant a mistrial" and that:

*90 Under extraordinary circumstances also, the exact nature of which we need not determine here, consideration may be given to the alternative possibility of excluding the testimony of the offending witness.
[State v. Tillman, supra, 122 N.J. Super. at 143, 299 A.2d 419 (emphasis added).]
But even as to that, we noted a "caveat.... as to the appropriateness of this remedy in a criminal case as affecting the defendant's constitutional right to a fair trial." Id. at 143-44, 299 A.2d 419. We further emphasized that "where it does not clearly appear that the violation of the sequestration order possesses a potential for prejudice, a less drastic remedy appears to be proper." Id. at 144, 299 A.2d 419. "The court may, in its discretion ... call the disobedience of the order to the attention of the jury as bearing on the credibility of the witnesses involved ... In such case the parties may interrogate the witnesses as to what occurred and may comment thereon in their summations." Ibid.
Horton involved the trial court's preclusion of the testimony of defendant's mother, an alibi witness, because she sat in court during the testimony of another such witness. We concluded that the defendant was "prejudiced both by possible speculation on the part of the jury as to why defendant's mother ... did not testify, and also by being deprived of the sole witness who could have established his alibi for the entire period in question." 199 N.J. Super. at 374, 489 A.2d 1164. We found such error could not be deemed harmless and in reversing the conviction, Judge Dreier stated:
Where a defendant's witnesses are claimed to be excludable, defendant's Sixth Amendment rights "to have compulsory process for obtaining witnesses in his favor" might be infringed. U.S. Const., Amend VI and XIV; N.J. Const. (1947), Art. I, par. 10. See also, Annotation, supra, 14 A.L.R.3d § 2(c) at 54. As was stated by the Pennsylvania Supreme Court in Commonwealth v. Scott, 496 Pa. 78, 436 A.2d 161, 163 (1981):
Absent a showing of fault on the part of the party or counsel who called a witness, the overwhelming weight of authority is that a trial court should not deprive a criminal defendant of a witness' testimony solely because he violated a sequestration order.... To deny an accused the opportunity to present relevant and competent evidence in his defense would constitute a violation of his fundamental constitutional rights to compulsory process for obtaining witnesses in his favor and to a fair trial ...

*91 Because of the availability of alternative sanctions to enforce a sequestration order and because of the fundamental constitutional basis for an accused's right to present relevant testimony in his favor, it ordinarily would be an abuse of discretion to disqualify a witness unless either the accused or his counsel has somehow cooperated in the violation of the order.
[State v. Horton, supra, 199 N.J. Super. at 373, 489 A.2d 1164.]
Later cases echo the general rule that exclusion of testimony should be the last resort, at least if the proffered testimony has any probative value. See State v. Burke, 522 A.2d 725, 729 (R.I. 1987), where Justice Weisberger stated:
Under the overwhelming weight of authority, it is an abuse of discretion to preclude a criminal defense witness's testimony for violation of a sequestration order unless special circumstances exist that would warrant the preclusion. See, e.g., Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); United States v. Torbert, 496 F.2d 154 (9th Cir.), cert. denied, 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974); Braswell v. Wainwright, 463 F.2d 1148 (5th Cir.1972); United States v. Schaefer, 299 F.2d 625 (7th Cir.), cert. denied, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962). See generally Annot. 14 A.L.R.3d 16, § 6(c) at 54-56 (1967 & 1986 Supp.). Unless violation of the sequestration order is due to the consent, connivance, procurement or knowledge of the defendant or his counsel, a trial justice should not deprive a criminal defendant of his right to present testimony. State v. Warren, 437 So.2d 836 (La. 1983); State v. Burdge, 295 Or. 1, 664 P.2d 1076 (1983); Commonwealth v. Scott, 496 Pa. 78, 436 A.2d 161 (1981). Instead, a trial justice should consider alternative sanctions to enforce the order, such as the issuance of a cautionary instruction to the jury or in some instances a contempt proceeding against the witness. See Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); State v. Leong, 51 Haw. 581, 465 P.2d 560 (1970); Commonwealth v. Scott, 496 Pa. 78, 436 A.2d 161 (1981).
There should be no exclusion of testimony where, as here, there was no intention to call the witness at the time he or she was in the courtroom as an observer, and there were alternative means of developing the sequestration issue before the jury. While a trial court's refusal to permit an offending witness from testifying will not always require a new trial, here defendant suffered prejudice. See State v. Tillman, supra, 122 N.J. Super. at 139-40, 299 A.2d 419; State v. Horton, 199 N.J. Super. at 373-74, 489 A.2d 1164.
It is true that Loud would not have presented testimony as to whether or not defendant had a gun or a knife at the time of the confrontation. But the State chose to call Officer Murphy in *92 rebuttal to negate defendant's testimony that he immediately reacted to his arrest by saying there was no gun. In summation the prosecutor pointed to defendant's testimony that he was not "just ... making up" the story about the knife for purposes of trial, and noted Officer Murphy's rebuttal testimony that that "defendant never said he had a knife" as indicating defendant's "willing[ness] to lie...." As the State suggested that the knife was a recent fabrication and relied upon a rebuttal witness to that effect, we cannot conclude that defendant was not prejudiced. To the contrary, the absence of testimony from both Greenberg and Loud may have left the jury with the impression that defendant fabricated the idea of the knife after his arrest.

D.
The judgment is reversed, and the matter is remanded for retrial on the counts on which defendant was convicted.
NOTES
[1] See also RPC 3.7(b) which provides that "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9." There was no endeavor to substitute an associate of Greenberg or any other attorney as trial counsel.
[2] We need not discuss whether RPC 3.7 prohibited further conduct by counsel in this case once he became aware of the possible need for his testimony. Here the motion was made on the day of trial. See Freeman, supra, at 303. Compare Host Marriott Corp. v. Fast Food Operators, Inc., 891 F. Supp. 1002, 1010 (D.N.J. 1995) (in absence of preclusion under RPC 1.7 or RPC 1.9, any disqualification would be limited to attorney not firm; disqualification motion "denied without prejudice to being renewed" if it subsequently develops that the attorney "will be a witness at trial").
[3] The nature of the weapon was an element of fourth degree assault, which involves a firearm, N.J.S.A. 2C:12-1b(4), and is a Graves Act offense. It is also an element of the other crimes.
[4] At the side-bar argument regarding the sequestration violation, counsel indicated that Loud would testify that at the time of his arrest defendant told the officer that there was a "gun" in the apartment and of its location in the kitchen drawer. This appears to either have been a misstatement on defendant's counsel's part, or an error in the transcript. Both parties appear to agree that Loud would have testified that defendant told the officer that he had a knife.