**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5364-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE FRANCISCO REINOSO,

    Defendant-Appellant.

_____

Submitted July 9, 2018 — Decided July 24, 2018

Before Judges Carroll and Rose.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 10-07-1691.

Condon & Theurer, attorneys for appellant (Kathleen Mary Theurer, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John J. Lafferty, IV, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Jose Francisco Reinoso appeals from a June 30, 2016 order denying his petition for post-conviction relief (PCR) after an evidentiary hearing. We affirm.

We discern the salient facts and procedural history from the record on appeal. Defendant was born in the Dominican Republic in 1959, and thereafter entered the United States in 1987. At the time of his arrest on drug charges in June 2009, defendant held the status of permanent legal resident, but he was not a United States citizen.

In July 2010, defendant was charged in Atlantic County Indictment No. 10-07-1691 with third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count one); third-degree distribution of cocaine, N.J.S.A. 2C:35-5(b)(3) (count two); and third-degree distribution of cocaine within 1000 feet of a school zone, N.J.S.A. 2C:35-7 (count three).

On November 15, 2010, pursuant to a negotiated plea agreement, defendant pled guilty to count two, as amended to third-degree possession with intent to distribute cocaine, N.J.S.A. 2C:35-5(b)(3). The State agreed to waive any prison term and associated parole ineligibility period that might otherwise be applicable pursuant to the Attorney General's Brimage[1] Guidelines, and recommend that defendant be sentenced to a non-custodial term of

_____

[1] State v. Brimage, 153 N.J. 1 (1998).

probation.  The State also agreed to dismiss the remaining counts of the indictment.

During the plea proceeding, defendant testified he was pleading guilty of his own free will, he was satisfied with his attorneys' services, and he had no questions for the court or counsel.  Defendant provided a factual basis for his guilty plea, acknowledging he possessed cocaine with the intention of sharing it with others.

On January 14, 2011, defendant was sentenced to a five-year probationary term and ordered to pay applicable fees and penalties.  Among the various conditions of probation imposed, defendant was directed to comply with any Immigration and Customs Enforcement requirements.  Defendant did not file a direct appeal.

Sometime after sentencing, the United States Department of Homeland Security commenced removal[2] proceedings against defendant.  Consequently, on June 16, 2015, an order of removal was entered, and defendant was deported to the Dominican Republic where he currently resides.

Defendant filed a timely PCR petition claiming ineffective assistance of plea counsel.  Specifically, he asserted counsel

---

[2] "Removal" is the current statutory term for what was previously referred to as "deportation."  State v. Gaitan, 209 N.J. 339, 345 n.1 (2012).

misadvised him of the immigration consequences of his plea, failed to provide him with discovery, and failed to discuss the possibility of entering into the Pretrial Intervention (PTI) program.

On May 18, 2016, Judge Patricia M. Wild, who had not presided over the plea or sentencing proceedings, conducted an evidentiary hearing on defendant's ineffective assistance of counsel claims. Defendant's plea counsel, Mark Roddy, Esq., and his associate, Meredith Hamson, Esq., were called as witnesses by the State.

Roddy testified to his experience, having handled between two and three thousand criminal matters prior to representing defendant. He stated he met with defendant and was aware defendant was not a United States citizen. Roddy was further aware that a conviction on any of the drug charges would affect defendant's immigration status. Based on his prior experience and the nature of the charges, Roddy opined it was unlikely defendant would be accepted into PTI, if he had applied.

After obtaining and reviewing discovery, Roddy characterized the State's proofs as "fairly strong. It was a sale in a school zone that the [S]tate had recorded with a consensual intercept recording." Contrary to defendant's assertion, Roddy was "sure" he reviewed the discovery with defendant.

4

After that testimony was elicited, defendant's PCR counsel advised the judge she "just became aware" Hamson was present in court, and requested that the judge sequester Hamson. The judge denied the application

> on the basis that [Roddy and Hamson] are both professionals. They are officers of the court, and I see no prejudice to the defendant by having them both here. As a matter of fact, I believe it might be helpful to the [c]ourt in moving the case along so that . . . [the prosecutor] may be able to dispense with some of the preliminar[y questions] with respect to [Hamson].

Roddy then continued his testimony, responding to the prosecutor's questions on direct examination as follows:

> Q. Did you ever inform the defendant that if he accepted the plea he, and I quote, wasn't going anywhere?
>
> A. No. I wouldn't say that.
>
> Q. Was it your understanding at the time of the plea that a plea to intent to distribute was an aggravated felony requiring mandatory deportation?
>
> A. It's an aggravated felony. There's no question about it. What the feds do is up to them.
>
> Q. And is it your practice to inform clients of potential immigration consequences such as deportation?
>
> A. I have been doing that since 1993.

A-5364-15T4

Q. Do you have any recollection if you informed the defendant that he would be deported if he accepted the plea?

A. I don't recall a specific conversation. I know that I would have told him because I tell everybody the same thing. . . .

Q. What would you have told him?

A. I'd tell him he's deportable. I'd say you're more deportable if you go to jail because the feds come to the county jail once a week and see who's in there and what they're in there for and whether they're citizens. So I said that's . . . number one. I would have told him that I've had people that have been charged with more serious stuff that have ducked deportation and people that are charged with less serious stuff that have been deported. So, there's no[] guarantee. The feds do whatever they're [going to] do. But I know that it increases your chances of success if you're not locked up because that's normally who they focus on. I would have told him that.

On cross-examination, Roddy indicated he recommended that defendant consult with an immigration lawyer prior to entering his guilty plea.

Hamson worked as Roddy's associate and she appeared with defendant at the November 15, 2010 plea proceedings. Hamson was aware defendant was not a United States citizen, and she had prior experience representing non-citizens in removal proceedings. Like Roddy, Hamson was also aware that a conviction on any of the charges would affect defendant's immigration status.

Hamson testified she circled the answers to the questions on the plea form based on the responses she received from defendant. These included the answers to question 17, which reflected that defendant was not a United States citizen, and that he understood he might be deported by virtue of his guilty plea, he would be subject to deportation/removal if his plea of guilty was to a crime considered an "aggravated felony" under federal law, and he had the right to seek legal advice on his immigration status prior to entering a plea of guilty.

As noted, defendant had already been removed to the Dominican Republic and consequently he testified telephonically at the hearing. According to defendant, although he had met with Roddy twice at Roddy's office, and thereafter at the courthouse, at no time did Roddy review the discovery or discuss the PTI program with him.

With respect to the immigration issue, defendant testified as follows:

> Q. Did Mr. Roddy explain to you the charge that they wanted you to plead guilty to?
>
> A. Yes. . . .
>
> Q. And did he advise you of any immigration consequences resulting from your plea of guilt[y]?

A. At no time.  He told me that there wouldn't be any problems that I was going any place.  That's what he told me.

Q. So you asked him if there would be any deportation consequences?

A. Yes.  I asked him if I would have problems with my documents.  And he said you wouldn't have any problems.  That's [the] same words he used.

Q. Did . . .  Mr. Roddy indicate why, if at all, the plea offer was a good plea offer?

A. No.  He did not explain it.  No.

Q. Did he advise you of . . . the likely consequences if you did not take the plea?

A. He told me that there was a video.  I never saw it because I never sell [drugs].  But he said that there was a call made from my telephone about selling drugs and that I could get six months in jail and that's why I . . . pled guilty.

Q. And so . . . . If you knew you could be deported, would you have pled guilty?

A. No.  I would have gone to trial even if I would have gotten five years in prison.  If I would have known I was going to be deported. He never said anything to me ever.

Defendant also denied speaking with Hamson about deportation at the time he initialed and signed the plea form.  On cross-examination, however, defendant testified he could not recall whether Hamson reviewed the questions on the plea form with him or circled the answers on the plea form.

On June 30, 2016, Judge Wild entered an order denying defendant's PCR petition. In her comprehensive written opinion that accompanied the order, the judge found the testimony of Roddy and Hamson credible. By contrast, Judge Wild found defendant was not a credible witness due to "several inconsistencies in his testimony" and because portions of his testimony were contradicted by his testimony during the plea hearing. Ultimately, the judge found "[defendant's] testimony that he was not informed of the PTI program; not informed of immigration consequences; and that he entered his plea 'under pressure' is simply not credible." This appeal followed.

On appeal, defendant argues:

POINT I

THE COURT'S DENIAL OF DEFENSE COUNSEL'S REQUEST FOR SEQUESTRATION OF STATE'S WITNESS WAS REVERSIBLE ERROR.

POINT II

THE COURT IMPROPERLY DENIED DEFENDANT'S PETITION FOR POST CONVICTION RELIEF.

II.

A.

We first address defendant's contention that the trial court's failure to sequester Hamson constitutes reversible error.

We conclude this argument does not warrant extended discussion. We add the following brief comments.

Trial courts have discretion to order the sequestration of witnesses. State v. Miller, 299 N.J. Super. 387, 399 (App. Div. 1997). Pursuant to N.J.R.E. 615, "At the request of a party or on the court's own motion, the court may, in accordance with law, enter an order sequestering witnesses." The purpose of sequestration is to prevent prospective witnesses from hearing other witnesses testify so that a witness' testimony is not shaped or tailored by another witness' testimony. State v. Williams, 404 N.J. Super. 147, 160 (App. Div. 2008). A witness who violates a sequestration order may be barred from giving testimony at trial. State v. Dayton, 292 N.J. Super. 76, 89 (App. Div. 1996). Nevertheless, "Absent a clear showing of prejudice[,] an inadvertent violation of a sequestration order does not trigger automatic exclusion of the witness' testimony." Williams, 404 N.J. Super. at 160.

Here, we agree with defendant that the status of Roddy and Hamson as attorneys should not serve as a per se basis to deny sequestration. Nonetheless, defendant has failed to identify any prejudice that resulted because Hamson was not sequestered. Initially, we note the sequestration request was not made until Roddy had given substantial testimony at the hearing. Moreover,

Roddy primarily testified to the plea negotiations and his pre-plea conversations with defendant, while Hamson's testimony focused on the plea hearing itself, at which Roddy was not present. Because their testimony essentially did not converge, the risk of Hamson tailoring her testimony after hearing Roddy testify was minimal. Accordingly, under the facts presented, we find no abuse of discretion in the court's decision to deny defendant's belated sequestration application that would warrant granting a new hearing or suppressing Hamson's testimony.

## B.

We next address defendant's contention that the trial court erroneously denied his PCR petition. In doing so, we review the legal conclusions of a PCR court and mixed questions of fact and law under the de novo standard of review. State v. Harris, 181 N.J. 391, 420 (2004). Where an evidentiary hearing has been held, we accord deference "[i]n reviewing a PCR court's factual findings based on live testimony" and should not disturb "the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Nash, 212 N.J. 518, 540 (2013)).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that a defendant in a criminal proceeding has the right to the

assistance of counsel in his defense. The right to counsel includes "the right to the effective assistance of counsel." Nash, 212 N.J. at 541 (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).

In Strickland, the Court established a two-part test, later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), to determine whether a defendant has been deprived of the effective assistance of counsel. Strickland, 466 U.S. at 687. Under the first prong of the Strickland standard, a petitioner must show that counsel's performance was deficient. It must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

Under the second prong of the Strickland standard, a defendant "must show that the deficient performance prejudiced the defense." Id. at 687. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a PCR petition challenging a guilty plea based on the ineffective assistance of counsel, the second prong is established when the defendant demonstrates a "reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and

12

would have insisted on going to trial."  State v. Nuñez-Valdéz, 200 N.J. 129, 142 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)).

A petitioner must establish both prongs of the Strickland standard in order to obtain a reversal of the challenged conviction.  Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52; Nash, 212 N.J. at 542.  "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence."  Gaitan, 209 N.J. at 350; see also State v. Echols, 199 N.J. 344, 357 (2009); State v. Goodwin, 173 N.J. 583, 593 (2002).  A failure to satisfy either prong of the Strickland standard requires the denial of a petition for PCR.  Strickland, 466 U.S. at 700.

In the context of plea agreements of non-citizen defendants, the performance of plea counsel is deficient under the first prong of the Strickland standard where counsel "provides false or misleading information concerning the deportation consequences of a plea of guilty."  Nuñez-Valdéz, 200 N.J. at 138.  In addition, in Padilla v. Kentucky, 559 U.S. 356 (2010), the United States Supreme Court held that plea counsel "is required to address, in some manner, the risk of immigration consequences of a non-citizen

13

defendant's guilty plea."[3]  State v. Blake, 444 N.J. Super. 285, 295 (App. Div. 2016) (citing Padilla, 559 U.S. at 367).  The Padilla Court created a "two-tiered analytical structure for assessing the duty of effective assistance," which "depend[s] on the certainty of immigration consequences flowing from the plea." Gaitan, 209 N.J. at 356, 380.

"[I]mmigration law is often complex, and the consequences of a conviction are often far from clear."  Blake, 444 N.J. Super. at 295 (citing Padilla, 559 U.S. at 369).  In circumstances where "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence[s,]" then an attorney is obliged to be "equally clear."  Padilla, 559 U.S. at 368-69.  Counsel's failure "to point out to a noncitizen client that he or she is pleading to a mandatorily removable offense [constitutes] deficient performance of counsel."  Blake, 444 N.J. Super. at 300 (quoting Gaitan, 209 N.J. at 380).

We are convinced defendant failed to sustain his burden of proving by a preponderance of the evidence that his plea counsel's performance was deficient under the first prong of the Strickland standard.  The credible evidence in the record supports the court's finding that Roddy did not provide misleading advice to defendant

---

[3] The holding in Padilla applied prospectively, and is applicable to defendant's plea here.  Gaitan, 209 N.J. at 380.

regarding the immigration consequences of his plea. Nuñez-Valdéz, 200 N.J. at 139-40. Roddy specifically denied advising defendant that he would not be deported. Although defendant testified to the contrary, we defer to Judge Wild's determination that Roddy's testimony was credible and defendant's testimony was not. See State v. L.A., 433 N.J. Super. 1, 17 (App. Div. 2013) ("When reviewing a PCR court's determination, we generally defer to the court's factual findings, including credibility determinations, if they are supported by 'adequate, substantial and credible evidence.'" (quoting Harris, 181 N.J. at 415)).

Moreover, the credible evidence supports the court's conclusion that Roddy provided constitutionally effective assistance by advising defendant that he was deportable and that he had the opportunity to confer with immigration counsel. Notably, Judge Wild also found credible Hamson's testimony that defendant provided affirmative responses to the questions on the plea form confirming he understood he may be deported and had the opportunity to confer with immigration counsel. Defendant therefore did not prove by a preponderance of the evidence that plea counsel's performance was deficient under the first prong of the Strickland standard.

We are also satisfied that defendant did not sustain his burden of establishing the second prong of the Strickland standard

because he failed to present "sufficient evidence to show 'a reasonable probability that, but for counsel's errors, [he or she] would not have pleaded guilty and would have insisted on going to trial.'" State v. O'Donnell, 435 N.J. Super. 351, 376 (App. Div. 2014) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Defendant was required to demonstrate that "had he been properly advised, it would have been rational for him to decline the plea offer and insist on going to trial and, in fact, that he probably would have done so[.]" State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (citing Padilla, 559 U.S. at 372).

Defendant did not offer any evidence beyond his bare conclusory assertion that he would not have pled guilty had he known of the immigration consequences. Standing alone, this does not demonstrate a reasonable probability that but for counsel's alleged deficiency defendant would not have accepted the plea bargain. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (holding "a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel").

Defendant's remaining arguments with respect to counsel's alleged failure to review discovery with him or advise him of the availability of the PTI program are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Defendant's failure to prove both prongs of the <u>Strickland</u> standard by a preponderance of the evidence required the denial of his PCR petition. <u>Nash</u>, 212 N.J. at 542.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION