**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2693-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EDGAR MARTINEZ, a/k/a
MARTINEZ EDGAR A.,

     Defendant-Appellant.

_____

Submitted September 10, 2024 – Decided October 17, 2024

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-01-0025.

Jennifer Nichole Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Hudson Earl Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Edgar Martinez appeals the February 27, 2023 Law Division order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. He seeks to overturn his jury trial convictions for murder, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. Defendant contends that his trial counsel rendered ineffective assistance by failing to abide by his desire to testify at trial and by failing to prepare him to testify. Defendant argues that had he testified, he would have explained to the jury his level of intoxication which, defendant posits, would have altered the jury's verdict. After carefully reviewing the record in light of the arguments of the parties and governing legal principles, we affirm.

I.

We need not recount in detail the circumstances leading to the stabbing death, which are fully described in our previous opinion, State of New Jersey v. Edgar Martinez, No. A-4143-17 (N.J. Super. Ct. App. Div. Sept. 2, 2020). It suffices to note that on July 4, 2015 the victim, J.G.-E.[1], and Jacquline Martinez[2]

---

[1] As we did our earlier opinion, we use initials to refer to the decedent in this opinion. State v. Martinez, No. A-4143-17 (slip op. at 2 n.1).

[2] Because Jacqueline Martinez and defendant coincidentally share the same surname, we refer to her by her first name to avoid confusion. We intend no disrespect in doing so.

2

went to a restaurant around 2:00 am. J.G.-E. called his former girlfriend, Benigna Reyes, and asked her to come to the restaurant. When she arrived, she spoke to a group of men, including defendant, who were seated at a table. After speaking with them, Jacqueline prepared to leave so the victim and Reyes could discuss their relationship, but J.G.-E. asked her to wait so he could take her home.

Reyes confronted Jacquline outside the restaurant and struck her, knocking her to the ground. J.G.-E. attempted to break up the altercation. The men who had previously spoken with Reyes in the restaurant stepped outside and confronted J.G.-E., resulting in a fight. J.G.-E. attempted to escape and fled into the restaurant's kitchen. However, defendant pursued him, knocked him to the ground, and then stabbed the victim, who later succumbed to the knife wounds.

At police headquarters, defendant told officers he was already "drunk" when he and his friends arrived at the restaurant where the violent confrontation occurred. Defendant told police he "was so drunk" that he could not remember how many times he stabbed the victim or where he stabbed him.

In January 2016, defendant was charged by indictment with first-degree murder, N.J.S.A. 2C:11-3a(1)(2), unlawful possession of a weapon, N.J.S.A.

2C:39-5(d), and possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4. He was tried before a jury during October and November 2017.

Defendant presented one witness at trial, Marco Gonzalez, one of the men who was with defendant on the night of the stabbing. Gonzalez testified he and defendant began drinking beer around 7:00 or 8:00 p.m. The group left one bar and traveled to a different bar around 10:00 p.m. The group continued drinking there until 2:00 a.m., and then went to the restaurant where the confrontation occurred. They continued drinking at the restaurant. Gonzalez testified that when the incident occurred defendant "was a little drunk."

The jury found defendant guilty of all counts that were charged in the indictment. In February 2018, the trial judge sentenced defendant on the murder conviction to a thirty-year prison term with a thirty-year parole ineligibility period. The trial judge also imposed a concurrent eighteen-month prison term on the conviction for unlawful possession of a weapon.[3] We affirmed defendant's conviction and sentence, and the Supreme Court denied defendant's petition for certification. State v. Martinez, A-4143-17 (slip op. at 3), cert. denied, 244 N.J. 456 (2020).

---

[3] The conviction for possession of a weapon for an unlawful purpose was merged with the murder conviction.

4                                                                    A-2693-22

In February 2021, defendant filed a pro se petition for PCR. In February 2022, defendant's PCR counsel filed a brief in support of defendant's PCR petition along with defendant's certification.

In November 2022, the PCR court heard oral argument and entered an order denying defendant's claims except for the contention that trial counsel deprived defendant of his right to testify at trial. As to that claim, the PCR court conducted a February 24, 2023 evidentiary hearing relating solely to communications between defendant and his trial counsel.

At the hearing, defendant's trial counsel testified that he advised defendant of his right to testify and told defendant that he should testify because he did not have a prior record. Trial counsel recalled that defendant told him he did not want to testify. Trial counsel explained that he believed the reason defendant did not testify was because he "got cold feet." Trial counsel further testified that he was "taken aback because [he] wanted to put him on the stand. But it wasn't [trial counsel's] decision."

Defendant testified at the PCR hearing that from the beginning of the case it was his plan to testify in his own defense. He claimed that if he had testified, he would have stated that he consumed about twenty-four beers and smoked marijuana at every place he went to that night. He stated that he wanted the jury

to "hear [his] version of the events of the story. And [he] also wanted the jury . . . to hear how much [he] had to drink and also the drugs that [he] had used throughout the night [and] what happened that night."

Defendant also testified that the only time he discussed whether he was going to testify with his trial counsel was during the trial when the judge asked him directly if he wanted to. Defendant testified that trial counsel told him it would not be a good idea to testify because the prosecutor was going to "eat [him] alive." Defendant stated his trial counsel did not prepare him to testify, nor did trial counsel prepare him for any anticipated cross-examination questions. Because defendant did not feel prepared, he decided not to testify. Moreover, defendant testified that he wrote letters to the Public Defender's Office and the trial judge advising them he wanted a new attorney because trial counsel seemed like he did not want to work with him.

At the conclusion of the hearing, the PCR court rendered an oral decision, denying defendant's last remaining PCR claim. The PCR court found trial counsel's testimony credible. It also found the record established a discussion between the trial judge and defendant occurred regarding the decision to testify, and that defendant was provided additional time to make that decision. The PCR court determined defendant was provided enough time to discuss the decision,

6

and ultimately, he decided that he did not want to testify and expressed as such to the trial judge.

The PCR court further found that the jury was given evidence of defendant's state of intoxication because they had the opportunity to view his statement to police after the incident. The court also noted that the jury had the opportunity to view video footage of the crime, which "provided the jury with firsthand evidence to assess the degree of intoxication."

Based on these findings, the PCR court concluded there was insufficient evidence to establish that trial counsel deprived defendant of his right to testify. The PCR court further found a lack of evidence to support defendant's contention that had he testified, the outcome of the trial would have been different.

Defendant raises the following single contention for our consideration:

> POINT I
>
> TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO ABIDE [BY] DEFENDANT'S DESIRE TO TESTIFY AT TRIAL AND IN FAILING TO PREPARE HIM TO TESTIFY, AND BECAUSE OF SUCH INEFFECTIVENESS, THE RESULT WOULD HAVE BEEN DIFFERENT.

A-2693-22

## II.

We preface our analysis by acknowledging the legal principles governing this appeal. "Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). "A petitioner must establish the right to such relief by a preponderance of the credible evidence." Ibid. (citing State v. Mitchell, 126 N.J. 565, 579 (1992)). "To sustain that burden, specific facts" that "provide the court with an adequate basis on which to rest its decision" must be articulated. Mitchell, 126 N.J. at 579.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-prong test established by Strickland and adopted by our Supreme Court in Fritz. 466 U.S. at 687; 105 N.J. at 58.

Under the Strickland paradigm, a defendant first must show that their attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of

reasonableness." Id. at 688. "A court evaluating a claim of ineffective assistance of counsel must avoid second-guessing defense counsel's tactical decisions and viewing those decisions under the 'distorting effects of hindsight.'" State v. Marshall, 148 N.J. 89, 157 (1997) (quoting Strickland, 466 U.S. at 689).

Turning to the second prong of the Strickland/Fritz test, a defendant also must show that counsel's "deficient performance prejudiced the defense[,]" Strickland, 466 U.S. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. Ibid.

Importantly for purposes of this appeal, "[w]e defer to trial court's factual findings made after an evidentiary hearing on a petition for PCR." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). "However, we do not defer to legal conclusions, which we review de novo." State v. Holland, 449 N.J. Super. 427, 434 (App. Div. 2017).

III.

Applying these principles to the present matter, we concur with the PCR court that defendant established neither prong of the Strickland/Fritz test. We repeat the relevant findings made by the PCR court:

To this [c]ourt it appears that the testimony of [trial counsel] was credible when he stated that after the witness for the defendant [Marco Gonzalez] did not testify as strongly as what was anticipated, that the defendant then had cold feet, in [trial counsel's] words, cold feet and chose not to testify.

The transcript from the trial record reflects the [c]ourt adequately explaining the rights of the defendant regarding testifying. The [c]ourt then states the following:

Do you understand these three choices?

The defendant: Yes.

The [c]ourt: Did you have sufficient time to discuss your choice or discuss these choices with [trial counsel], your attorney?

The defendant: No.

[Trial counsel] then says: I need a few minutes.

The [c]ourt: All right. I'm going to give you some time to talk to [trial counsel]. When you're ready, can you please tell me.

[Trial counsel]: Yes.

Later, defendant comes back into the courtroom with counsel, and the court states the following:

Okay, [defendant]. Please stand. Have you made a decision about whether you want to testify?

The defendant: Yes.

10

The [c]ourt: What's that decision?

The defendant: I am not going to testify.

The [c]ourt: All right.  And you've had a sufficient opportunity to speak to your lawyer about this?

The defendant: Yes.

Defendant asks this [c]ourt to find that if he had testified, he would have been able to explain to the jury the extent of his drinking or marijuana smoking that evening.

The jury, however, was presented with evidence of the defendant's intoxication, and this defense was presented throughout the trial.  The State also presented a recording of the defendant's sworn statement in which he told the police that he had been drinking.  In watching the video, the jury had the opportunity to view the defendant only hours after the crime.  The recording provided the jury with firsthand evidence to assess the degree of intoxication the defendant labored under.

Similarly, the jury had the opportunity to view surveillance videos that showed the crime.

Ultimately, it appears to this [c]ourt as well as to the Appellate Division, who reviewed this case on appeal, that there was strong evidence of—by the verdict and by the Appellate Division's decision of the defendant's guilt.

Against the weight of this evidence, the defendant now alleges the trial was unfair because he

did not testify. And he did not testify, he states, on the advice of counsel.

Enough evidence of intoxication had been given in the case for the intoxication instruction to be given. Given that defendant would have been cross-examined where the State could confront him with the video depicting the crime and his prior statement, it is also reasonable to conclude that if the defendant testified, he easily could have been put in a position of not being seen as credible.

To this [court], [trial counsel] testified credibly. He testified that he wanted his client to testify and at the last minute, the defendant chose not to testify.

To this [c]ourt, the objective record supports the finding that defendant freely chose not to testify.

As noted, we defer to the PCR court's factual and credibility findings. Blake, 444 N.J. Super. at 294. Trial counsel testified credibly at the PCR hearing that he advised defendant to testify and expected he would do so, while acknowledging the decision ultimately was defendant's to make. Counsel's performance in no way "[falls] below an objective standard of reasonableness." Strickland, 466 U.S. at 687. Defendant has thus failed to establish that his trial counsel was ineffective under the first prong of the Strickland/Fritz test.

We also agree with the PCR court that given the evidence of defendant's intoxication presented to the jury, defendant has failed to establish that his

12

testimony would create a reasonable probability that the outcome of the proceedings would have been different. Id. at 694. As our Supreme Court stressed in State v. Gideon, the second prong "is an exacting standard." 244 N.J. 538, 551 (2021) (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed[,]" but "the defendant must affirmatively prove prejudice." Ibid. (citing Fritz, 105 N.J. at 52, and quoting Strickland, 466 U.S. at 693). Defendant has failed to do so.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-2693-22