NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0315-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDWARD HOLLAND,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

April 5, 2017

APPELLATE DIVISION

Submitted February 2, 2017 - Decided April 5, 2017

Before Judges Lihotz, Hoffman and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Cumberland County, Indictment
No. 10-11-0667.

Joseph E. Krakora, Public Defender, attorney
for appellant (Rasheedah Terry, Designated
Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County
Prosecutor, attorney for respondent
(Danielle R. Pennino, Assistant Prosecutor,
of counsel and on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

Defendant Edward Holland appeals from a July 23, 2015 Law
Division order denying his petition for post-conviction relief
(PCR).  On appeal, defendant argues:

THE PCR COURT'S RULING THAT DENIED DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF MUST BE REVERSED BECAUSE THERE WAS A SUBSTANTIAL DENIAL OF DEFENDANT'S CONSTITUTIONAL RIGHTS IN THE PROCEEDINGS BELOW.

A. Trial Counsel's Failure to Seek the Recusal of the Trial Judge Violated Defendant's Sixth Amendment Right to the Effective Assistance of Counsel.

B. [The trial judge's] Failure to Recuse Himself Constitutes a Substantial Denial of Defendant's Right to a Fair and Unbiased Trial.

Following our review, we conclude the interests of justice require a judge to avoid all inference of impropriety. Although this record does not definitively show the trial judge remembered defendant was his former client many years ago, there is certainty of his prior representation of defendant on more than one criminal matter. Consequently, we are constrained to reverse the denial of PCR, vacate the judgment of conviction, and remand the matter for retrial.

I.

Defendant was arrested, charged, and convicted by a jury of third-degree possession of a controlled dangerous substance, heroin, with the intent to distribute, N.J.S.A. 2C:35-5(b)(3), and third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1). The State's evidence included defendant's admissions to the arresting officer, defendant's custodial statement, and heroin

seized pursuant to a warrant. Following the verdict, the State moved to impose a mandatory extended term sentence, N.J.S.A. 2C:43-6(f), which was granted. After merger, the trial judge sentenced defendant to a custodial term of seven years, subject to a three-year period of parole ineligibility.

Defendant appealed from his conviction and sentence. He challenged the State's summation and argued his sentence was excessive. In an unpublished opinion, this court rejected defendant's arguments and affirmed the judgment of conviction and the imposed sentence. State v. Holland, No. A-2007-12 (App. Div. Aug. 19, 2014).

Defendant timely filed a petition for PCR. He argued counsel provided ineffective assistance because counsel failed to seek the judge's recusal, knowing the trial judge had represented defendant in the past. During the evidentiary hearing, defendant's counsel testified defendant recognized the trial judge, explaining the judge prior to taking the bench, had represented defendant several times in connection with criminal charges, including drug offenses. Counsel additionally testified "there was an [in-chambers] conference" regarding the issue. Counsel asserted the trial judge "expressed that he had known [defendant]" and had a positive opinion of him. She acknowledged she did not move for recusal, stating defendant

believed it was beneficial to allow his former counsel to preside over his case.

Defendant testified, relating the nature of the prior legal representation by the trial judge, asserting there were separate matters in both the Superior and municipal courts. Defendant refuted his attorney's testimony suggesting he was pleased to learn his former lawyer was assigned to preside over his trial, stating, "I was bothered by it."

The State presented no witnesses, but offered certifications from the assistant prosecutors who tried the case, stating they were told by defense counsel the judge had previously represented the defendant and believed the judge was advised of the prior representation. Each of the assistant prosecutors certified: "It was my understanding . . . defendant was adamant that he wanted to proceed with [his former attorney] as the trial judge."

In a written opinion, the PCR judge confirmed defendant was previously represented by the trial judge in a 1993 criminal charge and a 1995 violation of probation. He found defense counsel and the prosecutors knew of the prior representation provided by the trial judge. Further, he found defendant was pleased by this fact and characterized the decisions not to seek

recusal or "place anything on the record" as "a strategic trial strategy." The judge then found:

> Despite the testimony to the contrary by [defense counsel], this [c]ourt cannot and does not find, by a preponderance of the evidence, that [the trial judge] had any recollection of having represented [defendant] on a prior occasion. This finding is based upon several factors. First, there is no record in the case at bar that reflects that knowledge. Clearly, [the trial judge] would have and should have addressed the issue on the record if it was brought to his attention. Second, the representation occurred 17 years prior to the start of trial and it would be objectively reasonable and understandable that [the trial judge] simply did not remember [defendant] because of the passage of time. Third, there was nothing in the record in front of him, such as testimony, documents or the pre-sentence report that would have brought his attention to the fact that he represented . . . defendant 17 years prior [sic]. Finally, while [defense counsel] recalls a conference in chambers regarding that issue, specifics of that conference have not been provided to the [c]ourt, such as when and under what circumstances that conference occurred. This is not to imply that [defense counsel] was not credible, but rather, her memory of the events might be clouded by the passage of time. Further[,] the certifications provided by the Assistant Prosecutors fail to allege with any level of specificity how and under what circumstances [the trial judge] was aware of his prior representation of . . . defendant. It seems highly unlikely and improbable that four attorneys, the [j]udge and . . . defendant would fail to place anything on the record regarding the prior representation between the trial, sentencing and appeal.

Relying on these findings, the PCR judge stated he could not "second-guess counsel's strategic decisions with the benefit of hindsight." Therefore, he concluded counsel's performance was not deficient. He also found defendant's right to a fair trial was not compromised as there was overwhelming evidence of guilt, the trial results were reliable, and defendant suffered no prejudice. He denied defendant's petition for relief. This appeal ensued.

## II.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Goodwin, 173 N.J. 583, 593 (2002) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). The process affords an adjudged criminal defendant a "last chance to challenge the 'fairness and reliability of verdict.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. Feaster, 184 N.J. 235, 249 (2005)); see also R. 3:22-1. "Post-conviction relief is neither a substitute for direct appeal, R. 3:22-3, nor an opportunity to relitigate cases already decided on the merits, R. 3:22-5." Preciose, supra, 129 N.J. at 459; see also State v. Echols, 199 N.J. 344, 357 (2009).

> It is well-settled that to set aside a conviction based upon a claim of ineffective assistance of counsel, a petitioner must prove, by a preponderance of the evidence, that (1) counsel performed deficiently, and

made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment; and (2) defendant suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984); [] Preciose, [supra,] 129 N.J. [at] 459 (reciting preponderance of the evidence standard of proof) . . . .

[State v. L.A., 433 N.J. Super. 1, 13 (App. Div. 2013).]

Strickland's two-prong test was adopted by New Jersey in State v. Fritz, 105 N.J. 42, 58 (1987).

In our review of a denial of a PCR petition following an evidentiary hearing, we afford deference to the PCR judge's factual findings, as long as they are "supported by sufficient credible evidence in the record." Nash, supra, 212 N.J. at 540; see also State v. Elders, 192 N.J. 224, 244 (2007) ("A trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" (quoting State v. Johnson, 42 N.J. 146, 162 (1964))). However, we do not defer to legal conclusions, which we review de novo. Nash, supra, 212 N.J. at 540-41; see State v. Gregory, 220 N.J. 413, 419-20 (2015).

Generally, four reasons afford a basis to grant PCR: (1) substantial denial of a state or federal constitutional right; (2) lack of jurisdiction by the sentencing court; (3) imposition of an excessive or unlawful sentence; or (4) any other ground

available "as a basis for collateral attack upon a conviction." *Preciose*, *supra*, 129 N.J. at 459; R. 3:22-2. When raising a claim of ineffective assistance of counsel, a defendant "must do more than make bald assertions that he [or she] was denied the effective assistance of counsel. He [or she] must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). The burden rests with defendant to prove such a violation "by a preponderance of the credible evidence." *Preciose*, *supra*, 129 N.J. at 459.

## III.

The issue presented in this appeal, whether counsel should have insisted on the trial judge's recusal, is unusual. N.J.S.A. 2A:15-50 permits a party to move for the recusal of a judge, prior to commencement of trial. Defendant argues counsel's failure to seek recusal deprived him of a fair trial. The State rejects this position, suggesting the decision represents a "valid trial strategy," which cannot be second guessed.

Before the PCR court, defendant's trial counsel testified defendant wanted to be tried by his former counsel. Unsurprisingly, defendant offered a contrary view. Though we recognize defendant's claim of ineffective assistance of trial

counsel is not one ordinarily brought on direct appeal, <u>State v. Hess</u>, 207 <u>N.J.</u> 123, 145 (2011), defendant's underlying theory, that the trial judge should have recused himself, certainly could have been raised on direct appeal. <u>See</u> <u>R.</u> 3:22-4 (barring PCR claims which could have been brought on direct appeal). In many respects, defendant's argument is precisely the sort of "sandbagging" the <u>Strickland</u> standard is designed to defeat. <u>Cf.</u> <u>Wainwright v. Sykes</u>, 433 <u>U.S.</u> 72, 103 n.5, 97 <u>S. Ct.</u> 2497, 2515 n.5, 53 <u>L. Ed.</u> 2d 594, 618 n.5 (1977) (Brennan, J., concurring) (defining sandbagging in this context as when a defendant voluntarily withholds a claim from the trial court, only to raise it on appeal).

Despite this likely possibility, we are convinced we need not evaluate counsel's actions at this time because the paramount issue is the effect of a trial judge presiding over the criminal trial of his former criminal client. Following our review, we reject the assumption by the PCR judge, who denied PCR by speculating the trial judge did not recall his representation. This is not an issue on which supposition suffices. "The question raises concerns about public confidence in the integrity and impartiality of our system of justice . . . [b]ecause judges must avoid not only actual conflicts but also the appearance of impropriety to promote the public's trust . .

. ." State v. McCabe, 201 N.J. 34, 38 (2010). There can be no compromise of the "bedrock principle articulated in Canon 1 of the Code of Judicial Conduct that '[a]n independent and honorable judiciary is indispensable to justice our society.'" Id. at 42-43 (quoting DeNike v. Cupo, 196 N.J. 502, 514 (2008)).

Equally important to our system of justice is the need to safeguard a criminal defendant's right to a fair and unbiased trial. The unequivocal evidence is, in the past, the trial judge acted as counsel for defendant on similar drug offenses. Regardless of the strength of the State's case in this matter, we are compelled to vacate the judgment of conviction.

We start by examining principles governing a judge's disqualification. First, the Legislature has addressed the issue, mandating the recusal of judges for reasons set forth in N.J.S.A. 2A:15-49. Pertinent to this matter, the statute provides:

> No judge of any court shall sit on the trial of or argument of any matter in controversy in a cause pending in his court, when he [or she]:
>
> . . . .
>
> b.   Has been attorney of record or counsel for a party to such action[.]
>
> [Ibid.]

This standard is reinforced by our Court Rules and the Code of Judicial Conduct. "Our rules [] are designed to address actual conflicts and bias as well as the appearance of impropriety." McCabe, supra, 201 N.J. at 43. Specifically, Rule 1:12-1(g) provides a judge "shall be disqualified on the court's own motion and shall not sit in any matter . . . when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so."

Our Supreme Court has repeatedly emphasized New Jersey "judges are required to maintain, enforce, and observe 'high standards of conduct so that the integrity and independence of the judiciary may be preserved.'" DeNike, supra, 196 N.J. at 514 (quoting Code of Judicial Conduct Canon 1); see also McCabe, supra, 201 N.J. at 41. Further, Rule 1:18 requires all judges abide the Code of Judicial Conduct, included as an appendix to the Part 1 rules. See Code of Judicial Conduct, Pressler & Verniero, Current N.J. Court Rules, Appendix to Part 1 at 517 (2017). "The Code is comprised of seven canons that provide both broad and specific standards governing the conduct of judges." In re Advisory Letter No. 7-11 of the Supreme Court Advisory Comm., 213 N.J. 63, 71 (2013).

> The "overarching objective of the Code of
> Judicial Conduct is to maintain public

confidence in the integrity of the judiciary." In re Advisory Letter[, supra,], 213 N.J. [at] 71. Such confidence "depends on a belief in the impersonality of judicial decision-making." United States v. Nobel, 696 F.2d 231, 235 (3d Cir. 1982), cert. denied, 462 U.S. 1118, 103 S. Ct. 3086, 77 L. Ed. 2d 1348 (1983).

[State v. Presley, 436 N.J. Super. 440, 447 (App. Div. 2014).]

Canon 3 of the Code was amended on September 1, 2016. The Canon requires: "A judge shall perform the duties of judicial office impartially and diligently." Thereafter, several sections, added by the amendment, provide instances specifically directing disqualification. Although we are aware these modifications were adopted long after defendant's trial and the PCR hearing, we acknowledge the guidance of the Supreme Court on this subject. Relative to this matter is Canon 3.17(B)(4)(b), which states:

Judges shall disqualify themselves based on their prior professional relationships as follows:

. . . .

(b) In proceedings in which a party was a former private client for whose matter the judge had primary responsibility, disqualification is necessary for a period of seven years following the conclusion of that representation. However, disqualification for a period of time in excess of seven years from the conclusion of the representation may be required in certain circumstances. In making that

determination, a judge should consider, among other relevant factors: 1) the scope of the representation, including but not limited to the cumulative number of matters handled by the judge, whether a continuous fiduciary relationship existed with the client over an extended period of time, and the length of time that has elapsed since the conclusion of that representation; 2) the duration of the representation; 3) the nature of the representation, including but not limited to the acrimonious nature of the underlying litigation and any information acquired about the client as a consequence of that representation that could cast doubt on the judge's impartiality; and 4) in respect of a corporate client, whether the principals of the entity are the same as existed during the representation.

[Code of Judicial Conduct, Canon 3.17(B)(4).]

See Presley, supra, 436 N.J. Super. at 464 (identifying similar factors when reviewing issue of judicial recusal).

Additional subsections of Canon 3.17 direct:

(C) A disqualification required by this rule is not subject to the parties' waiver. The judge shall, however, disclose to the parties any circumstance not deemed by the judge to require disqualification but which might be regarded by the parties as affecting the judge's impartiality.

(D) A judge shall address disqualification or issues of recusal and disqualification promptly upon recognition of grounds which would give rise to partiality or the appearance of partiality.

[Code of Judicial Conduct, Canon 3.17(C), (D).]

A-0315-15T4

The official comment accompanying Canon 3.17 highlights the Court's pronouncement in DeNike. When determining whether "disqualification is necessary to protect the rights of litigants and preserve public confidence in the independence, integrity and impartiality of the judiciary," "[w]ould a reasonable, fully informed person have doubts about the judge's impartiality?" Code of Judicial Conduct, Pressler & Verniero, Current N.J. Court Rules, Appendix to Part 1, comment 1, 2 to Canon 3, Rule 3.17 at 524 (2017) (quoting DeNike, supra, 196 N.J. at 517). Finally, discussing whether disqualification is required in a proceeding where a litigant was a former private client of the judge more than seven years earlier, the comment expressly references "judges should be guided by DeNike v. Cupo, 196 N.J. 502." Pressler & Verniero, supra, comment 5 to Canon 3, Rule 3.17 at 527.

Here, the record identifies the trial judge's representation of defendant occurred seventeen years earlier. Indeed, this is well beyond the mandatory seven-year period commanding recusal stated in Canon 3.17(B)(4)(b). However, we are unconvinced that resolves the question. "Neither Canon 3[] nor Rule 1:12-1 recite an exclusive list of circumstances which disqualify a judge and require recusal from a matter." In re Advisory Letter, supra, 213 N.J. at 73 (alteration in original)

(quoting State v. Kettles, 345 N.J. Super. 466, 470 (App. Div. 2001), certif. denied, 171 N.J. 443 (2002)). A review of additional judicial determinations provides guidance governing recusal when a judge is faced with a litigant who is a former client.

In Rivers v. Cox-Rivers, 346 N.J. Super. 418 (App. Div. 2002), this court considered the propriety of a trial judge presiding over a matrimonial matter involving a litigant who, fourteen years earlier, was a client of the judge's former law firm, and for whom the judge appeared as counsel in a prior divorce proceeding involving the same parties. Id. at 420. The judge denied the motion for recusal filed following his ruling on the merits of the matrimonial matter. Ibid. In doing so, the judge specifically noted at the time he entered his order he neither recognized the litigants nor recalled the prior representation. Id. at 420-21.

The reviewing panel concluded a "bright-line rule" was necessary "to maintain public confidence in the judicial decision making process," stating:

> Except when required by the rule of necessity, where a judge has previously represented one of the parties in a matter before him against the other, any judicial action taken is a nullity, whether the conflict comes to light during the proceedings before an order enters or reasonably soon following the conclusion of

15

> the matter after an order has been entered. See <u>N.J.S.A.</u> 2A:15-49b; <u>R.</u> 1:12-1(c), (f). That result is required by the need "to maintain public confidence in the integrity of the judicial process, which in turn depends on a belief by litigants and the general public alike in the impartiality of judicial decisionmaking."
>
> [<u>Id.</u> at 421 (quoting <u>Kettles</u>, <u>supra</u>, 345 <u>N.J. Super.</u> at 469-70).]

We further held "the conflict is non-waivable by the parties, either expressly or implicitly" stating "[i]f a judge is precluded from presiding over a matter in which a former client is involved, especially where the current adversary is the party against whom the prior representation occurred, any action taken by the judge as a result of the proceeding cannot be recognized as valid." <u>Ibid.</u> Significantly, our decision relied on <u>Nobel</u> and <u>Kittles</u>, which were criminal proceedings, noting "the public policy imperatives are the same in civil cases." <u>Id.</u> at 422.

A similar approach was followed in <u>State v. McCann</u>, 391 <u>N.J. Super.</u> 542 (2007), when a panel of this court held, "[i]n the future, if a defendant makes a particularized and credible assertion of facts that objectively suggest an appearance of partiality on the part of the judge issuing a search warrant, based on a prior relationship or otherwise, a 'bright-line' rule . . . will be applicable." <u>Id.</u> at 555.

We recognize the "bright-line" was not specifically incorporated by the Supreme Court in the recently revised version of Canon 3.17. We also recognize the instant case is distinguishable from Rivers, in that here, the judge represented defendant in an unrelated proceeding. See Rivers, supra, 346 N.J. Super. at 422 ("Here, not only are the parties identical but the underlying subject matter is the same, i.e., the marriage and the parties' rights stemming therefrom."). We also recognize the instant case may be distinguished from McCann, as a matter of degree, not of kind. McCann, supra, 391 N.J. Super. at 544-45, 554 (holding disqualification was necessary where the motion judge previously represented defendant for several years, and was thus not a "neutral and detached magistrate.").

In the past we have not differentiated between civil and criminal matters in the application of the rule precluding a judge from adjudicating a matter involving a former client. See Rivers, supra, 364 N.J. Super. at 421-22. However, we conclude a criminal prosecution, which implicates the liberty interest of a criminal defendant, requires a strict application to assure impartiality, to avoid the appearance of impropriety, and importantly, to preserve the integrity of the judicial process. We therefore distinguish the requirements of Canon 3.17(B)(4)(b), which sets a seven-year bar for mandatory

recusal, as insufficient in criminal proceedings. The necessity of preserving the integrity of impartiality and avoiding all appearances of impropriety must be paramount. Judges must always "refrain . . . from sitting in any causes where their objectivity and impartiality may fairly be brought into question." DeNike, supra, 196 N.J. at 514 (quoting State v. Deutsch, 34 N.J. 190, 206 (1961)).

Our determination finds support in provisions of an Administrative Directive delineating the Supreme Court's guidelines concerning "Disqualification of Judges in Criminal Matters." The directive predominantly addresses circumstances facing a judge who previously served as a prosecutor, public defender, or assistant in one of those offices. However, the directive also includes this charge:

> A judge should disqualify himself [or herself] from hearing a criminal matter involving a defendant who the judge, in his previous capacity, had personally prosecuted or defended, or had represented in a civil matter in the past. The reason for this is that the appearance of judicial impartiality must be preserved.

"There can be no doubt that the directive in question, embodying guidelines promulgated by the Supreme Court concerning judicial disqualifications in criminal cases, has the full force and effect of law." State v. McNamara, 212 N.J. Super. 102, 108-09 (App. Div. 1986), certif. denied, 108 N.J. 210 (1987). The

directive was issued on September 19, 1983, and has not been modified or repealed.

We also highlight the warning sounded by this court in State v. Horton, 199 N.J. Super. 368 (App. Div. 1985), which reversed a conviction and granted a new trial to a defendant who noted during allocution the judge had been his attorney. We held: "The potential for invidious, though, we are sure, unfounded, suppositions as to the court's motive in trying and sentencing a former client causes us strongly to suggest that a trial judge faced with such situation should recuse himself and have another judge assigned to try the case." Id. at 377. We explained:

> The public has no way of knowing (a) what confidences, if any, defendant imparted to the [the judge] when represented by him . . . (b) whether the judge was a public defender or, if not, whether there was a fee problem; or (c) whether there were other offenses that defendant admitted to during conferences with his then attorney. . . . [T]he prior lawyer-client relationship could also have given the appearance of influencing trial rulings.
>
> [Id. at 375.]

For these reasons we cannot countenance the State's suggestion, adopted by the PCR judge, to deny relief because defendant engaged in a trial strategy to proceed to trial before a judge who previously represented him. Even if this were true,

19

we reject such a contention as it would compromise the principles that must guide members of the judiciary. See State v. Tucker, 264 N.J. Super. 549, 555 (App. Div. 1993) (explaining even an appearance of impropriety can erode public confidence); see also Rivers, supra, 346 N.J. Super. at 422-23 ("If there is validity to the sense of the trial court judge in this matter that defendant knew of the disqualifying involvement early on, and was withholding the information as a 'trump card,' that alone is no ground for recognizing the inherently invalid order.").

Here, it is undisputed the judge's prior representation of defendant was known to all parties at the time of trial. Therefore, when an instance arises where a judge previously represented a criminal defendant, we direct the prior representation and relationship shall be clearly stated on the record, and the judge then be disqualified from proceeding in the matter. See Horton, supra, 199 N.J. Super. at 375 ("If for no other reason than to give both the State and defendant an opportunity to make a record concerning potential disqualification, the very least that the trial judge should have done was to place this information on the record at the commencement of the proceeding."). To demand any less would invite questions about the impartiality of the justice system

and thereby "threaten[] the integrity of our judicial process." DeNike, supra, 196 N.J. at 515.

Accordingly, we reject the conclusion of the PCR judge that the trial judge was unaware of the prior representation, despite counsels' statements to the contrary. We further reject the PCR judge's rationale that defendant suffered no prejudice by what was found to be an employed trial strategy. The prejudice envelops the entire process by casting doubt and leaving the lingering question of whether a trial judge's familiarity favored a defendant, or conversely, caused a trial judge to overcompensate so as not to reflect an appearance of bias. We further conclude defendant's late presentation of the issue will not override the public policy to assure an independent, impartial judiciary. "[J]ustice must satisfy the appearance of justice." Deutsch, supra, 34 N.J. 190 at 206 (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S. Ct. 11, 13, 99 L. Ed. 11, 16 (1954)).

The order denying PCR is reversed and we remand the matter to the Criminal Presiding Judge to vacate the judgment of conviction and reassign the matter for retrial.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0315-15T4