# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0502-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

YOBANE VALDEZ,

    Defendant-Appellant.

_____

> Submitted January 28, 2026 – Decided April 9, 2026
>
> Before Judges Currier and Smith.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FO-12-0225-24.
>
> Wilentz, Goldman & Spitzer, attorneys for appellant (Allison Ens, of counsel and on the briefs).
>
> Linda Estremera, Middlesex County Prosecutor, attorney for respondent (Hudson E. Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a bench trial, defendant Yobane Valdez was convicted of criminal contempt, N.J.S.A. 2C:29-9(b)(2), and harassment, N.J.S.A. 2C:33-4(a). As a result, defendant was found in violation of his final restraining order (FRO). On appeal, defendant challenges the sufficiency of the trial court's factual findings in support of his harassment conviction. He also argues, for the first time on appeal, that he was deprived effective assistance of counsel at trial when his counsel permitted him to testify without conversing or strategizing with him in advance. We affirm for the reasons which follow.

I.

A.L.[1] sought a FRO against defendant. In 2019, the Family Part granted A.L.'s FRO under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The FRO barred defendant from: A.L.'s residences and places of employment; any communication or contact with A.L., O.P. or A.M.;[2] making or causing someone else to make harassing communications with them; and stalking, following, or threatening to harm, stalk, or follow them. Further, the

---

[1] We use initials to protect the privacy of the victims pursuant to Rule 1:38-3(d)(10).

[2] A.M. and O.P. were A.L.'s children from other relationships. A.L. also had two children with defendant, G.V. and M.V. The terms of defendant's FRO permitted him parenting time with G.V. and M.V. on certain dates and at certain times.

A-0502-24

FRO granted A.L. temporary custody of the parties' children, G.V. and M.V. However, defendant was permitted contact with his children, as well as unsupervised visitation on alternate Saturdays from 10:00 a.m. to 6:00 p.m., and every Wednesday from 3:30 p.m. to 6:00 p.m. with pick-up and drop-off curbside at A.L.'s residence.

On August 29, 2023, defendant was charged with contempt for violating the FRO, N.J.S.A. 2C:29-9(b)(2), and by committing the crime of harassment, N.J.S.A. 2C:33-4. The matter was tried on September 20, 2024. Several witnesses testified, including Officer Jose Almonte, Jr., A.L., A.M., and defendant. We summarize the testimony.

Officer Almonte testified that he responded to an alleged FRO violation on the night of August 29, 2023. When he arrived, he spoke with A.L., who showed him the FRO, and gave him a recording and pictures of defendant's car sitting in her driveway. Officer Almonte also spoke with A.M., who corroborated A.L.'s story and gave him pictures of defendant's car along with voice notes.

A.L. testified next. She testified defendant would "show up [to her home] whenever he felt like it," and blare his car horn. She further testified that this

happened two to three times a week, specifically on days when he wasn't allowed to be at A.L.'s home.

The State introduced two August 29, 2023 phone calls from defendant to G.V. and M.V. To his daughter, he stated, "[d]on't f[*****]g . . . don't make me go back over there and f[*****]g knock the door down, bro. Hang the f[**]k up. I don't even want to talk to you, bro. Get the f[**]k out of here, bro." In his call to his son, defendant made the following statements:

> [DEFENDANT]: What, you f[*****]g feeling sorry for your mother that she's there by herself? She can stick her f[*****]g finger up her a[*]s. I don't give a f[**]k. But, whatever. I don't give a f[**]k (indiscernible). Hurry the f[**]k up because you better (indiscernible). But, I'm about to knock the f[*****]g door down and get locked up.
>
> . . . .
>
> [DEFENDANT]: [N]ow there's gonna be a reason . . . for me to get locked up.

Defendant made both phone calls on the same day the police were called to A.L.'s home. A.L. told police that the phone calls were not made to her, but that she felt threatened by them after she learned about them from her daughter.

A.M. testified that, beginning in May 2023, defendant would park in front of A.L.'s house two to three days a week, on days the FRO did not permit him to be there. While there, he would constantly honk his car horn and yell at the

4

A-0502-24

children to come outside or ultimately call them. A.M. further testified that defendant would speak to her outside of A.L.'s house whenever he had the chance. She stated that his comments about her appearance, her job, and his threats towards her made her feel uncomfortable.

After the State rested, the record reveals a colloquy between defendant and trial counsel:

> COUNSEL: You're not going to testify. We didn't discuss it.
>
> DEFENDANT: Well, why not?
>
> COUNSEL: You want to testify?
>
> DEFENDANT: Well, they're here accusing me of all these false accusations.
>
> COUNSEL: Please, please.
>
> DEFENDANT: You can question me all you want. I don't have a problem with that.
>
> . . . .
>
> COUNSEL: We'd like to call . . . [defendant].

Defendant waived his Fifth Amendment right against self-incrimination after an extended colloquy with the court. He testified that, despite knowing about the parenting time terms of the FRO, he would pick his son up on days other than Wednesdays, and sometimes his daughter as well. Defendant denied

ever speaking to A.M. directly, or calling A.L. However, defendant admitted telling the children, "I'm gonna knock your door down," but never intended to do so. Defendant further admitted he did sound his car horn outside of A.L.'s home and parked in the driveway to pick up his son on August 29, 2023.

The trial court made findings on issues of credibility and fact. The court found Officer Almonte, A.L., and A.M. to be credible. The court found defendant not credible, stating that it found "defendant's demeanor . . . to be confrontational, hostile, and evasive." The court further found defendant was a "controlling, manipulative individual who felt that the [FRO] and nothing else applied to him if he didn't think it did."

On the merits, the court found the State had proven beyond a reasonable doubt the first three elements required under N.J.S.A. 2C:29-9(b)(2). Specifically, the court found: (1) "there was a court order that was entered under the PDVA," (2) "defendant knew of the existence of that order by his own testimony," and (3) "defendant purposely or knowingly violated the provisions of the order . . . ." The court found defendant did so through "honking his horn constantly for a period of approximately ten minutes or more with the intent to cause alarm . . . which is, in fact, what he did." Next, the court found "there was ample evidence on the record . . . that the defendant purposefully and knowingly

6

harassed [A.L.] and [A.M.] on August the 29th, 2023," and determined that the elements of harassment under N.J.S.A. 2C:33-4(a) were met. The court also found that A.L. felt "real fear . . . at the hand of the defendant . . . ."

The court sentenced defendant to an aggregate 210 days in jail with five years' probation on the two convictions. On appeal, defendant argues:

> POINT ONE
>
> > THE TRIAL COURT FAILED TO MAKE THE REQUISITE FACTUAL FINDINGS IN SUPPORT OF THE HARASSMENT CONVICTION.
>
> POINT TWO
>
> > MR. VALDEZ'S CONVICTIONS SHOULD BE REVERSED BECAUSE HE WAS DEPRIVED THE EFFECTIVE ASSISTANCE OF COUNSEL.

II.

Our limited scope of review in domestic violence cases is well established. "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

We apply a deferential standard of review when reviewing the trial court's factual findings. Balducci v. Cige, 240 N.J. 574, 594-95 (2020). We further defer to the trial court's credibility determinations as they have "a better perspective than a reviewing court in evaluating the veracity of a witness." S.B.B. v. L.B.B., 476 N.J. Super. 575, 595 (App. Div. 2023) (quoting C.R. v. M.T., 248 N.J. 428, 440 (2021)).

When reviewing the trial court's findings, "we will 'not disturb the factual findings and legal conclusions of the trial judge unless convinced that those findings and conclusions were so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Whiteman v. Twp. Council of Berkeley Twp., 261 N.J. 106, 122 (2025) (quoting Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017)). However, we review the legal decisions of Family Part judges under the same de novo standard applied to other cases. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019).

A-0502-24

III.

A.

We consider defendant's first argument, that the trial court made insufficient findings on harassment. We disagree. A person commits the crime of harassment, if,

> with purpose to harass another, [the person]:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> [N.J.S.A. 2C:33-4(a).]

Our Supreme Court has found that "[n]ot all offensive or bothersome behavior . . . constitutes harassment." J.D., 207 N.J. at 483. "The mere exposure to profanity, though irritating to many people, is not necessarily indicative of an intention to harass," and "mere venting of frustration or irritation at the situation is insufficient by itself to constitute harassment." State v. Duncan, 376 N.J Super. 253, 263-64 (App. Div. 2005).

[O]ur Supreme Court has found "[t]he smallest additional fact or the slightest alteration in context, particularly if based on a history between the parties, may move what otherwise would appear to be non-harassing conduct

9

into the category of actions that qualify for issuance of a restraining order." J.D., 207 N.J. at 483-84. "[A] purpose to harass can be inferred from a history between the parties." Id. at 487. That said, a victim's subjective reaction alone will not suffice unless there is evidence of improper purpose. Ibid. "A judge may use '[c]ommon sense and experience' when determining a defendant's intent." D.M.R. v. M.K.G., 467 N.J. Super. 308, 323 (App. Div. 2021) (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)). Further, "[a] finding of a purpose to harass may be inferred from the evidence presented and from common sense and experience." Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003)) (internal quotation marks omitted).

Our thorough review of the record reveals that the trial court's findings on the elements of harassment were supported by sufficient credible evidence in the record. The evidence included: the observations of A.L. and A.M. of defendant parked in A.L.'s driveway on August 29, 2023, and multiple other days when he was not permitted to be there under the terms of the FRO; the hostile and profane phone calls between defendant and his two children which he made while improperly parked in A.L.'s driveway on August 29, 2023; and defendant's own admission that he repeatedly visited A.L.'s home on days he was prohibited from being there by the FRO. The record shows defendant

repeatedly appeared in A.L.'s driveway on days he wasn't supposed to be there, honking his horn for extended periods of time. The trial court found defendant's calls from the driveway to his children located inside A.L.'s home, were hostile and profane. Defendant admitted that he threatened to kick A.L.'s door down on those calls. There was more than sufficient credible evidence for the trial court to find that defendant had a purpose to harass. Having found a purpose to harass, the court also had ample evidence in the record to find, beyond a reasonable doubt,[3] that defendant violated N.J.S.A. 2C:33-4(a) with the profane and threatening phone calls to his children, which were communicated to A.L., their mother. We discern no error.

B.

Defendant, on appeal, asserts that his "trial counsel's performance was materially deficient." Specifically, defendant asserts that trial counsel failed to properly counsel him concerning his Fifth Amendment rights. Further, he claims that because of counsel's deficient performance, his testimony "served as a foundation for the court's determination of his guilt." We find these arguments without merit.

---

[3] See N.J.S.A. 2C:1-13.

First, we note that claims for ineffective assistance of counsel (IAC) are "particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." State v. Hooper, 459 N.J. Super. 157, 174-75 (App. Div. 2019) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). This is because many IAC claims "involve allegations and evidence that lie outside the trial record." Id. at 175 (quoting State v. Castagna, 187 N.J. 293, 313 (2006)). However, we can consider IAC claims on a direct appeal "when the trial itself provides an adequately developed record upon which to evaluate [a] defendant's claims." Ibid. (alteration in original) (quoting Castagna, 187 N.J. at 313). We choose to briefly consider defendant's claim.

"To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). This requires a defendant not to make "bald assertions," rather they "must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Holland, 449 N.J. Super. 427, 435 (App. Div. 2017) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

12

When a defendant alleges ineffective assistance of counsel, both prongs of the Strickland[4]/Fritz[5] test must be satisfied. State v. Hernandez-Peralta, 261 N.J. 231, 247 (2025). The first prong requires a defendant to "'show that counsel's performance was deficient,' which 'requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.'" Ibid. (quoting Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52). The second prong requires a defendant to show "counsel's 'deficient performance prejudiced the defense.'" Ibid. (quoting Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52). This prong requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 694).

The record is crystal clear. It shows that even if trial counsel's performance was deficient, and we express no opinion on that question,

---

[4] Strickland v. Washington, 466 U.S. 668 (1984).

[5] State v. Fritz, 105 N.J. 42 (1987).

defendant suffered no prejudice as demonstrated in the following colloquy between defendant and the court.

> THE COURT: Sir, is it your desire to provide testimony here today?
>
>    . . . .
>
> [DEFENDANT:] Yes.
>
> THE COURT: Okay. Sir, you understand that you have a right to remain silent, do you understand that?
>
> [DEFENDANT:] Yes, sir.
>
> THE COURT: You don't have to provide any testimony if you don't want to, and this [c]ourt . . . can draw no negative inferences from your decision not to testify, do you understand that?
>
> [DEFENDANT:] Yes, sir.
>
> THE COURT: If you do testify, sir, you understand that what you do say can be considered by the [c]ourt in determining your guilt or innocence, do you understand that, sir?
>
>    . . . .
>
> [DEFENDANT:] Yes, sir.
>
> THE COURT: And, you understand also that, if you do testify, that you'll be subject to cross-examination from the State?
>
> [DEFENDANT:] Yes, sir.

14

The court properly counselled defendant on his Fifth Amendment rights.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0502-24