**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0806-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAMAR RANDLEMAN, a/k/a
LAMAR J. RANDELMAN,

    Defendant-Appellant.

_____

Submitted April 22, 2026 – Decided June 23, 2026

Before Judges Smith, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-09-0787.

Bailey & Toraya, LLP, attorneys for appellant (Adam W. Toraya, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a trial, defendant Lamar Randleman was convicted of carjacking and theft charges and sentenced to an aggregate twenty-five years' incarceration in state prison. We affirmed on direct appeal. Defendant unsuccessfully moved for post-conviction relief (PCR), alleging ineffective assistance of counsel (IAC) on multiple issues and contending that these errors prejudiced him. On appeal, defendant claims the PCR court erred by rejecting his claims and denying his petition without an evidentiary hearing.

We affirm for the reasons which follow.

I.

A.

We summarize the facts from defendant's direct appeal:

> On March 31, 2014, Patricia Fitzpatrick returned home after grocery shopping at about 1:00 p.m. She took groceries out of her trunk and put them on the kitchen counter, then put a collar on her dog and went back outside. Once outside, Ms. Fitzpatrick saw defendant standing near the back of her car. He closed the trunk and approached Ms. Fitzpatrick. Defendant took her car keys, kicked the dog, and pushed her into the shrubbery. After taking the keys, defendant got in the car and sped away. Ms. Fitzpatrick could not identify the person who stole her car with any certainty.

> Ms. Fitzpatrick's neighbor, David Reich, heard screaming and the dog barking, causing him to look out the window. After seeing the carjacking, he got dressed and told his wife to call 9-1-1. He ran outside and asked

2

Ms. Fitzpatrick which car was taken, and which way the carjacker went. As a result, Mr. Reich got in his car and headed towards Route 22, looking for Ms. Fitzpatrick's car. Eventually he saw a person who looked like defendant driving Ms. Fitzpatrick's car at a high rate of speed, and he followed it onto Route 22. The carjacker exited Route 22 and pulled into a store parking lot. While in the car, Mr. Reich called 9-1-1 and told the dispatcher that he was following Ms. Fitzpatrick's car.

Mr. Reich followed defendant into a store parking lot and saw defendant park. Mr. Reich also pulled into the parking lot and parked his car within three parking stalls of where defendant had parked the stolen car. Mr. Reich saw defendant exit the car, toss something over a fence that separated the parking lot from a neighboring gas station, and then walk between two cars towards the gas station. Mr. Reich then saw Officer Michael Pasquale pull into the same lot in his patrol car. He heard Officer Pasquale command defendant to stop and then watched defendant run between him and the officer. Mr. Reich saw Officer Pasquale attempt to dive and tackle defendant, miss, and then begin to pursue defendant on foot.

Officer Pasquale testified that he observed the stolen car just before it reached the parking lot, and he entered the parking lot through a different entrance. Officer Pasquale confronted defendant and ordered him to the ground, but defendant disregarded the order and ran. Defendant ran along the fence until he was able to slip through it onto the gas station property. Officer Pasquale pursued him on foot, knocking a section of fence down and chasing defendant into the gas station. Officer Pasquale testified on direct that he "never" lost sight of defendant, but he admitted on cross-

3

examination he did not see defendant park and exit the stolen vehicle.

    While Officer Pasquale chased defendant into the gas station, a dark Chevy Malibu sedan pulled into the gas station, and the passenger side door swung open. Defendant got into the car, which subsequently drove away at a high rate of speed. Officer Pasquale fired four shots from his service weapon into the Malibu. He later claimed to investigators that he feared for his life and that he believed that the driver of the Malibu was going to run him over.

    Another officer, Corporal Thomas Norton, pursued the car in his marked vehicle. The car spun out of control making a turn and crashed into a curb, where it remained disabled. Officer Norton blocked the driver-side door of the car with his patrol unit to prevent the driver from fleeing. He ordered the driver to turn off the car, and the occupants surrendered.

[State v. Randleman (Randleman I), No. A-5378-16 (App. Div. Dec. 30, 2021) (slip op. at 2-5).]

B.

On September 12, 2014, a grand jury returned an indictment charging defendant with: first-degree carjacking, N.J.S.A. 2C:15-2(a)(1); third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a); as well as fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2).

Prior to trial, the State and defendant filed several motions. Pertinent to this appeal was defendant's motion to produce discovery under Rule 3:13-3.

A-0806-24

Defendant's motion sought the Mountainside Township Police Department internal affairs (IA) report regarding an investigation into Officer Pasquale, which led to his suspension from the department. Ibid. The trial court denied most of defendant's motion, finding many requested IA records: were unrelated to the subject investigation; did not constitute impeachment evidence; were related to a pending investigation of Officer Pasquale with no findings of impropriety to date; or were inadmissible. The court, however, ordered the State to disclose two statements, including Sergeant Richard Latargia's IA statement regarding Officer Pasquale's alleged tendency to exaggerate, and Officer Adam Foti's IA statement that he had "problems determining what was real and what was exaggerated," when it came to Officer Pasquale.

Next, the court conducted a N.J.R.E. 104 hearing regarding Sergeant Latargia's IA statement. Sergeant Latargia testified that Officer Pasquale's exaggerations were in response to "non-police scenarios such as Officer Pasquale's professed weight room prowess and mastery of sports statistics." However, when it came to Officer Pasquale's work as an officer, Sergeant Latargia opined that Officer Pasquale's reports were always "completely accurate," and he never felt that Officer Pasquale was untruthful. After hearing such testimony, the court found Sergeant Latargia's opinion of Officer Pasquale

A-0806-24

to be inadmissible pursuant to N.J.R.E. 403 and 702.  Further, the court determined that defendant was not permitted to reference the suspended status of Officer Pasquale at trial pursuant to N.J.R.E. 402 and 403.

Defendant's jury trial began.  On the second day, the court conducted a Rule 104 hearing regarding evidence about Officer Pasquale unholstering his weapon.  Officer Pasquale testified he unholstered his weapon once he realized defendant was in the car and the car was accelerating towards him.  Defendant's attorney did not cross-examine Officer Pasquale during the Rule 104 hearing, asserting the court already ruled on "the law of the case[]."  However, following the Rule 104 hearing, counsel moved for a mistrial, asserting the court's decision to not allow Officer Pasquale's unholstering and discharge of his gun into evidence deprived defendant of a fair trial.

Defendant exercised his Fifth Amendment right not to testify at trial.  The court engaged in a lengthy colloquy with defendant to confirm that he understood his right not to testify.  Following the colloquy, the court found itself

> satisfied that [defendant] . . . [has] first rate defense counsel.  Both have represented to the [c]ourt not only on the record but frankly in the presence of the prosecutor and in my chambers that they've had ongoing extensive communications with [defendant] on this very issue, and that is whether or not he'll testify. I'm satisfied by the proffer of both lawyers that they have fully engaged the defendant on this issue and in

6

> the end based on the testimony of [defendant], which I find to be credible, it's clear he's an intelligent man and he understands the risks and the possible benefits of testifying. He's had ample opportunity according to him to discuss the issue with his lawyers and I find this is a knowing, voluntary and intelligent waiver of defendant's right to testify.

After the trial, the jury found defendant guilty of carjacking and theft. The court denied the State's motion for an extended term of imprisonment and the defendant's motion for a new trial. Defendant was sentenced to 25 years in prison, subject to the No Early Release Act,[1] on the carjacking conviction and a concurrent five years on the theft conviction. On direct appeal, we affirmed his convictions and sentence.

Defendant moved for PCR. The PCR court heard argument and found defendant failed to establish a prima facie case of IAC and also failed to show prejudice under Strickland[2] for any of his claims, and that he was not entitled to an evidentiary hearing. Defendant appealed.

On appeal, defendant argues trial counsel was ineffective when they: failed to call defendant and Foti as witnesses during the Rule 104 hearing; failed to cross-examine Officer Pasquale at his Rule 104 hearing; failed to properly

---

[1] N.J.S.A. 2C:43-7.2.

[2] Strickland v. Washington, 466 U.S. 668 (1984).

A-0806-24

counsel defendant on his right to testify at trial; improperly implied during summations that defendant was in the parking lot for an illegal purpose; failed to object to the court's decision not to answer a juror's question; and fell asleep during trial. Defendant also contends the PCR court committed error by finding his PCR claim was procedurally barred under Rule 3:22-5.

## II.

We review the PCR court's interpretations of law de novo. State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (citing State v. Harris, 181 N.J. 391, 419 (2004)). However, "[o]ur review of a PCR court's factual findings is 'necessarily deferential.'" Ibid. (quoting State v. Nash, 212 N.J. 518, 540 (2013)). When petitioning for PCR, a defendant must establish he is entitled "to PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) (citing State v. Preciose, 129 N.J. 451, 459 (1992)).

## III.

We first address defendant's argument that the PCR court erred by finding defendant's PCR claims were procedurally barred under Rule 3:22-5. Defendant asserts the PCR court found he could not relitigate these claims because this court found, on direct appeal, that he had not been prejudiced by the trial court's exclusion of evidence regarding Officer Pasquale's actions. In other words,

A-0806-24

defendant argues the PCR court barred these claims because they were previously litigated and adjudicated by this court. Defendant misunderstood the PCR court's findings and therefore, we find this claim without merit. We look no further than the PCR court's statement of reasons. The court found defendant's claims were <u>not</u> procedurally barred, noting that while the issues were related, they were not previously adjudicated, and stated:

> It is the opinion of the [c]ourt that [d]efendant is not barred due to the fact that the claims made in the PCR could have been raised at trial or on direct appeal, <u>R.</u> 3:22-4(a), or that have been previously litigated, <u>R.</u> 3:22-5. Although the argument could be made the matters involved were similar, <u>R</u>[ule] 3:22-5 only bars a claim that is "identical or substantially equivalent that adjudicated previously on direct appeal." <u>See</u> [<u>State v. Bontempo</u>, 170 N.J. Super. 220, 234 (Law Div. 1979)]. Therefore, because reasonable minds could differ as to the identicality of these two issues, this [c]ourt finds the [d]efendant is not barred.

We agree with the PCR court that while defendant's arguments were similar on direct appeal to his claims on PCR, they are not identical and thus not barred under <u>Rule</u> 3:22-5.

## IV.

We turn to defendant's various IAC claims.

Our Supreme Court has held that claims for ineffective assistance of counsel are "particularly suited for post-conviction review because they often

9

cannot reasonably be raised in a prior proceeding."  State v. Hooper, 459 N.J. Super. 157, 174-75 (App. Div. 2019) (quoting Preciose, 129 N.J. at 460).  "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits."  R. 3:22-10(b).  The defendant must make more than "bald assertions," rather they "must allege facts sufficient to demonstrate counsel's alleged substandard performance."  State v. Holland, 449 N.J. Super. 427, 435 (App. Div. 2017) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

"Under both the Federal and State Constitutions, criminal defendants are entitled to effective assistance of counsel."  Hernandez-Peralta, 261 N.J. at 247 (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10; Strickland, 466 U.S. at 684-85; State v. Fritz, 105 N.J. 42, 58 (1987)).  When a defendant alleges IAC, both prongs of the Strickland/Fritz test must be satisfied.  Ibid.  The first prong requires a defendant to "'show that counsel's performance was deficient,' which 'requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.'"  Ibid. (quoting Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52).  The second prong requires a defendant to show "counsel's 'deficient performance prejudiced the

A-0806-24

defense.'" Ibid. (quoting Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52). This prong requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 694).

### A.

Defendant first argues IAC for multiple actions during the Rule 104 hearings: failure to call Officer Foti as a witness to attack Pasquale's credibility; failure to call defendant to testify at Officer Pasquale's Rule 104 hearing; and failure to cross-examine Officer Pasquale to discuss the location of the bullet holes in the car, in order to undermine Officer Pasquale's credibility.

We first turn to the issue of Officer Foti's testimony. Defendant specifically contends trial counsel did not call Foti as a witness in a timely fashion, and was unprepared to argue the motion, thus prejudicing the outcome of the hearings. We disagree with the PCR court's findings that trial counsel was not deficient in this regard, however, we reach the same conclusion as the PCR court, because defendant failed to show this error prejudiced the outcome of his trial.

11

On the eve of trial, defense counsel moved to compel the State to turn over Officer Pasquale's IA file. The trial court found Officer Foti and Sergeant Latargia's IA statements discoverable, noting the statements themselves were not admissible but could lead to admissible evidence. Sergeant Latargia was called as he still worked for the department, however Officer Foti was no longer employed by the department. Therefore, defense counsel was unable to locate Officer Foti for the Rule 104 hearing. As a result, the court made the following statement to defendant:

> You to your credit acknowledged how belated this submission is. I'm not adjourning the trial so you can hunt down Foti on the prospect that he might say that Pasqual[e] is, you know, I didn't believe him.
>
> Because you had many, many months to file this application. Instead[,] this was a fire drill of your own contrivance.

We agree with the trial court that defense counsel's belated submission, delayed for almost a year, was deficient. For this reason, defendant has established the first prong of <u>Strickland</u>. We now consider whether the failure to call Officer Foti prejudiced the defense.

We first note Sergeant Latargia testified during the Rule 104 hearing that Officer Pasquale's reports were always "completely accurate," and he never felt that Officer Pasquale was untruthful when it came to Officer

12

Pasquale's work as an officer. As the trial court stated, there was only a "prospect" of Officer Foti testifying that Office Pasquale's was untruthful. Given that Sergeant Latargia's statements bolstered Officer Pasquale's testimony and credibility, Officer Foti's testimony could have further bolstered Officer Pasquale's credibility. On appeal, defendant makes unsupported allegations, and speculates that Officer Foti would have testified in a certain way beneficial to his defense. However, defendant failed to provide an affidavit from Officer Foti containing what he would have testified about.

Defendant fails to prove defense was prejudiced under the second prong of Strickland. Without more, we cannot find counsel's deficient performance prejudiced defendant. It follows that defendant's IAC claim fails.

We turn to the two other arguments regarding defendant and Officer Pasquale.

Concerning the cross-examination of Officer Pasquale, the trial court noted that counsel "consistently sought to elicit the testimony of the unholstering of the weapon and the discharge of the weapon." The record shows that, while counsel did not call defendant nor cross examine Officer Pasquale during trial, counsel did move for a mistrial, arguing that the court's exclusion of testimony regarding Pasquale's unholstering or discharging his gun "precluded the

13

defendant [from] having a jury hear or infer why he got in the car and why he took off so fast." Counsel argued that this exclusion deprived defendant of a fair trial.

While we conclude that the record reveals no IAC, for completeness we note that if defendant had shown counsel was ineffective, he still failed to demonstrate prejudice under Strickland's second prong. 466 U.S. at 687. Defendant proffered no testimony from Officer Foti that would have changed the outcome of the Rule 104 hearing or the trial. The record shows ample evidence tending to prove beyond a reasonable doubt that defendant committed carjacking and theft offenses. Defendant cannot show how: his own testimony; the cross-examination of Officer Pasquale at the hearing; nor the introduction at trial of Officer Foti's IA testimony would have changed the outcome at trial.

We discern no IAC, and if there had been IAC, we conclude defendant failed to show prejudice under prong two of Strickland.

B.

Defendant next argues the PCR court erred in denying his petition because trial counsel's performance was ineffective in other ways. Defendant alleges trial counsel: failed to adequately inform him of his right to testify; offered speculative examples of what defendant may have been doing in the store

14

parking lot that painted him in a negative light; refused to object to the court's decision not to hear a juror's question during trial; and fell asleep during trial. We are unpersuaded.

i.

We begin with defendant's allegation that he was not properly advised of his right to testify.

Trial counsel has the responsibility to inform defendant of his right to testify and "the benefits inherent in exercising that right and the consequences inherent in waiving it." State v. Savage, 120 N.J. 594, 630-31 (1990). Failure to do so can give rise to an IAC claim. Id. at 631. It is not the role of the trial court to advise defendant of this right or the advantages and disadvantages of same. Id. at 630 (citing State v. Bogus, 223 N.J. Super. 409, 423 (App. Div. 1988)).

The record belies defendant's bald assertion. We recite the colloquy between the court and defendant.

> THE COURT: [counsel,] in your presence moments ago[,] indicated that he has discussed this issue, the issue of whether you should testify or not with you repeatedly as has [other counsel]. Is that accurate?
>
> DEFENDANT: That's accurate.

15

THE COURT:  And these discussions haven't just been today.  They've been ongoing for weeks, perhaps months.  Is that accurate?

DEFENDANT:  Correct.

THE COURT:  Have you had this discussion with your very capable lawyers in private?

DEFENDANT:  Yes.

THE COURT:  And so did you feel comfortable in freely expressing your views on this subject?

DEFENDANT:  As far as testifying?

THE COURT:  Yes.

DEFENDANT:  Yes.

THE COURT:  Did you have an opportunity to ask your lawyers the risks and the possible benefits of testifying?

DEFENDANT:  Yes.

THE COURT:  And were you given an opportunity to ask them questions about this issue?

DEFENDANT:  Yes.

THE COURT:  Don't tell me what the advice was.  Did you understand their responses?

DEFENDANT:  Yes.

THE COURT:  In the end, Mr. Randleman, [counsel] are not on trial.  You are.

16

A-0806-24

DEFENDANT:  Yes.

THE COURT:   And whatever advice they may give you, really in the end this is a decision for you and you alone.  Understood?

DEFENDANT:  Yes.

THE COURT:  First of all, has anybody pressured you not to testify?

DEFENDANT:  No.

THE COURT:  Anybody coerced you not to testify?

DEFENDANT:  No.

THE COURT:  Is it your decision after conferring and seeking the advice of your lawyers, is it your decision not to testify in this case?

DEFENDANT:  Yes.

This exchange demonstrates defendant's knowledge and understanding that he would not testify during trial, and that the decision was his alone after extensive consultation with counsel.  It also disposes of defendant's bald assertion that counsel failed to explain the ramifications at trial of the court's order excluding any evidence regarding Officer Pasquale's discharging of his weapon.  Defendant confirmed directly to the court that:  he had an opportunity to ask his lawyers questions; understood their responses; and voluntarily elected not to testify.

A-0806-24

We conclude there was no IAC on this issue.

ii.

Defendant next argues trial counsel was ineffective because counsel suggested, during closing argument, that defendant was in the middle of an illegal act unrelated to the crimes with which he was charged. He contends that this argument prejudiced the jury and deprived him of his right to a fair trial. We disagree.

The PCR court found this argument represented unassailable trial strategy employed by counsel, who suggested to the jurors that "[d]efendant could have been doing any number of things" while in the mall parking lot. Defendant fails to show the closing argument was <u>not</u> sound trial strategy. Rather, the record shows that during trial, the evidence supported an inference that defendant was engaged in some illegal conduct. At closing, counsel presented a theory that defendant was not guilty of carjacking, but could have engaged in other illegal activity, as a means to persuade the jury without disregarding compelling evidence against him. Defendant presents no evidence, other than bald assertions, that this theory prejudiced him. His post-trial dissatisfaction with this strategy does not rise to the level of ineffective assistance. We conclude there was no IAC here.

18

iii.

Defendant next argues counsel was ineffective for failing to object when the trial court declined to answer a question from the jury midtrial. Defendant asserts the trial court acted improperly and that competent counsel would have objected. We disagree.

The PCR court found the trial court acted within its discretion to decline hearing the question and maintain order in the courtroom. Rule 1:8-8(d), which establishes the procedure for addressing jurors' questions during trial, states in relevant part:

> If the court determines to permit jurors to submit proposed questions, it shall explain to the jury in its opening remarks that subject to the rules of evidence and the court's discretion, questions by the jurors will be allowed for the purpose of clarifying the testimony of a witness. The jurors' questions shall be submitted to the court in writing at the conclusion of the testimony of each witness and before the witness is excused. The court, with counsel, shall review the questions out of the presence of the jury. Counsel shall state on the record any objections they may have, and the court shall rule on the permissibility of each question.

Rule 1:8-8(d) gives the trial court wide discretion to permit or not permit jury questions during trial. In this instance, the record shows that a juror inquired if they were able to ask a question during the trial. The court exercised its rule-

19

based discretion to decline.[3] Counsel failed to object to the court's ruling on the question, but this bald assertion alone cannot become IAC, nor an ineffective act which prejudiced defendant, without defendant's <u>Strickland</u> proofs.

iv.

Defendant's last IAC argument is that counsel fell asleep multiple times during trial. Defendant alleges this happened during jury selection, witness testimony, and other times. The record does not indicate counsel fell asleep once, much less multiple times. On the contrary, the record shows that the trial court commended defense counsels' performance on the record, noting their vigorous advocacy throughout the trial. We conclude that defendant's IAC allegations, once again, are unsupported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

---

[3] <u>See</u> <u>also</u> N.J.R.E. 611, which gives a trial court broad discretion to exercise control over the courtroom.

A-0806-24